404 So.2d 929 (1981)
STATE of Louisiana
v.
Samuel J. BICKHAM.
No. 81-KA-0386.
Supreme Court of Louisiana.
September 28, 1981.
*931 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Marion B. Farmer, Dist. Atty., Peter J. Garcia, Sp. Pros., John J. Williams, Jr., Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
Tom W. Thornhill, Slidell, for defendant-appellant.
LEMMON, Justice.[*]
In this appeal from a conviction of armed robbery defendant principally questions the trial court's rulings on motions to suppress evidence and identification and on a motion to appoint a lunacy commission. We affirm.
The robbery of a convenience store occurred at approximately 2:00 a. m. Three black males entered the store, where the night clerk was working alone. One robber, subsequently identified as defendant, ordered a pack of cigarettes, but then grabbed the clerk by the collar and put a knife to her throat. One of the other robbers then jumped over the counter and got money out of the register, while the third took bottles of liquor from the shelf. They also took a radio and the clerk's purse and rings.
After the robbers left the store, the clerk called the police, stating that one of the robbers had a beard, one wore a brown jacket, and the third wore a multicolored shirt. Officer Williams, receiving the report of the robbery by radio, proceeded immediately toward the store. In checking the vicinity of the robbery, he noticed a black male with a beard driving toward the interstate highway. Since it was 2:00 a. m. and there were few vehicles on the road, the officer decided to follow the bearded black man. Upon turning onto the interstate highway, the officer turned on his blue lights and search lights, whereupon the heads of two more persons came into view.
The officer then turned on his siren, but the suspects increased their speed, with Williams in pursuit. Williams radioed ahead to another officer, who set up a roadblock. The suspects attempted to run the blockade, but after several shots were fired, the car swerved and smashed into the police car. The officers apprehended the suspects, recovering the stolen merchandise from the car.
The officers then returned the suspects to the store, where the clerk identified defendant as the person who had held a knife at her throat. He was charged, tried and convicted.
Defendant first contends that the trial court erred in denying his motion to suppress the evidence seized as the result of an allegedly illegal search and seizure. Defendant argues that the officers were unable to point to specific and articulable facts which would have warranted the initial stop of the defendant and his companions, so that any evidence seized as a result of the stop should be suppressed.
Law enforcement officers may make an investigatory stop when it is reasonable to believe that a suspect has engaged in criminal activity. C.Cr.P. Art. 215.1; State v. Robinson, 342 So.2d 183 (La.1977); see also, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967). Reasonable cause for an investigatory stop is something less than probable cause. Nevertheless, the officer must have articulable knowledge of particular facts, which in conjunction with reasonable inferences drawn therefrom is sufficient to provide reasonable grounds to suspect the party involved of past, present or imminent criminal activity. State v. Wilson, 366 So.2d 1328 (La.1978). The existence of reasonable *932 cause must be determined under the facts of each case by ascertaining whether the officer had sufficient knowledge of circumstances which would justify an infringement upon the individual's right to be free of governmental interference. State v. Dixon, 337 So.2d 1165 (La.1976).
Knowledge that an offense has been committed is often a critical element in establishing reasonable cause. When the officer making the stop knows a crime has been committed, he has only to determine whether the additional trustworthy information justifies a man of ordinary caution to suspect the detained person of the offense. See State v. Collins, 378 So.2d 928 (La.1979).
Williams knew that an armed robbery had been committed by a bearded black man and observed a black male with a beard driving away from the scene immediately after the crime at 2:00 a. m., when there were few vehicles on the road. These circumstances justify the initial attempt to detain for an investigatory stop. Defendant's attempt to escape after the officer put on his lights was consistent with the conduct of a person who had just committed a crime, and the appearance of two more persons in the car further supported the officer's suspicion that this car was connected with the robbery. The fact that the officer had no description of the car itself and only vague descriptions of the suspects and their clothing does not defeat the legality of the stop under the overall circumstances of this case. The motion was properly denied.
Defendant additionally contends that the evidence must be suppressed because the officers were beyond their territorial jurisdiction at the time of the initial stop. Although the officer initiated his pursuit of defendant's vehicle within the city limits (his territorial jurisdiction), he did not actually initiate the stop until he was outside his territorial jurisdiction. The actual location of the stop (or attempt to stop) is not of controlling significance in this case for several reasons.
First, the codal provisions which authorize lawful arrest both with and without a warrant empower officers in close pursuit to leave their territorial jurisdiction for the purpose of effecting an arrest. C.Cr.P. Arts. 204 and 213. Although C.Cr.P. Art. 215.1 does not contain explicit language relating to the officer's right to make a "close pursuit" stop, common sense would certainly imply that such a procedure is appropriate within the "spirit" of the statute which authorizes a temporary detention. See C.Cr.P. Art. 3. Further, although the Louisiana "stop and frisk" statute authorizes peace officers to effectuate stops under defined circumstances, the statute does not expressly limit the peace officer to his territorial jurisdiction. While it is arguably reasonable to construe the statute as authorizing an investigatory stop only in the territorial jurisdiction in which the officer is authorized to make an arrest, it is equally reasonable to construe the statute as authorizing the officer in close pursuit to leave the jurisdiction to make an investigatory stop, when, as here, the officer initiated his pursuit for the purpose of stopping while within his jurisdiction.
The officer in this case properly "stopped" defendant. After initiating his pursuit at a point within his territorial jurisdiction, the officer was faced with exigent circumstances necessitating his departure. It would be absurd to require an officer under these circumstances to abandon his surveillance of an armed robbery suspect who is in the process of rapidly departing in an automobile in the early morning hours.
The ensuing arrest occurred at a point outside the officer's territorial jurisdiction, but only after he left his jurisdiction because of exigent circumstances. Moreover, defendant was arrested for a felony, and C.Cr.P. Arts. 213(3) and 214 authorize private citizens and peace officers alike to arrest for felonies not committed in their presence. Thus, even if the police officer was acting only as a private citizen when he effectuated the arrest, it was valid under Louisiana statutory law. State v. Jones, 263 La. 164, 267 So.2d 559 (1972).
*933 More significantly, we reject defendant's contention that the remedy necessary for enforcement of the territorial jurisdiction rule is exclusion of reliable evidence produced as a result of arrests or stops initiated in good faith by an officer who began to act within his territorial limits.
In this regard State v. Patton, 374 So.2d 1211 (La.1979) and State v. Longlois, 374 So.2d 1208 (La.1979), cited by defendant, are clearly distinguishable from the case presented here. Both cases involved law enforcement agents with duties which were explicitly limited by statutes.[1] And in both cases the offenses were misdemeanors. In sustaining motions to suppress evidence secured as a result of the officer's conduct, the court in Patton and Longlois emphasized the explicit legislative limitations on the action of the particular law enforcement agent.[2]
While the court in Longlois held that the wildlife agent's unauthorized arrest for possession of marijuana constituted an "unreasonable seizure" prohibited by La.Const. Art. I, § 5 (1974), we decline to extend this rationale to the circumstances presented here. Even if it is assumed that the officer in the present case acted outside of his territorial jurisdiction, the officer's conduct amounts to nothing more than a good faith statutory violation of a rule designed, not for the purpose of preventing unreasonable invasions of privacy, but for the delineation of the territorial zones of responsibility of various law enforcement agencies. Exclusion of reliable evidence obtained in an otherwise legal and good faith seizure would not serve the administration of justice or the purpose of the legislative directive of territorial responsibility.
Moreover, this court in the Patton and Longlois decisions did not intend to suggest that all violations of statutory restrictions on arrest will be deemed constitutional violations under La.Const. Art. I, § 5 (1974). Nor did we intend to extend the exclusionary rule to include non-constitutional violations of statutes which are not designed to protect the privacy interests of citizens. When the statutory limitation (or duty) alleged to have been violated by the officer is not designed to implement fundamental rights of privacy, this court should not employ the exclusionary rule as a device to enforce such legislative directives. This is, of course, particularly true when the facts strongly support a finding that the officer acted reasonably and in good faith in arguably exceeding the bounds of his authority.
In this case the officer's actions in stopping and arresting defendant did not constitute an unreasonable seizure under either the Fourth Amendment or under La. Const. Art. I, § 5 (1974). The defendant's motion to suppress was properly denied.
Defendant next contends that the trial court erred in denying the motion to suppress the clerk's out-of-court identification of defendant because (1) defendant was not represented by counsel and (2) the identification procedure was impermissibly suggestive.
Within 15 minutes after the robbery three suspects were brought back to the store, where the clerk viewed them through a two-way mirror. She identified all of them by their clothing and identified defendant, by his beard and by the shirt and pants he was wearing, as the one who held a knife to her throat.
Defendant first argues that his constitutional right to counsel was violated because he did not have assistance of counsel at the time of the identification. Absent special circumstances the presence of counsel is not required at pre-indictment lineups. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Since due *934 process safeguards usually provide adequate protection for a defendant before a formal charge, the right to counsel was explicitly limited in Kirby to a "criminal prosecution", which commences only with the initiation of adversary judicial proceedings by formal charge, preliminary hearing, indictment information or arraignment.
In the present case defendant did not have an attorney at the time of the identification, and he did not request the presence of counsel. The identification was made immediately after the robbery. Moreover, defendant does not assert any special circumstances which would justify an exception to the general rule that the presence of counsel is not required at a pre-indictment line-up.
Defendant also argues that the direct confrontation between the suspect and the victim was impermissibly suggestive. In reviewing an identification procedure, the court must determine whether the procedure was so unnecessarily suggestive and so conducive to an irreparable mistaken identification that the defendant was denied due process of law. Manson v. Braithwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). A trial judge's determination on the admissibility of an identification should be accorded great weight and will not be disturbed on appeal unless the evidence reveals an abuse of discretion.
One-on-one confrontations between a suspect and a victim, while not favored by the law, are permissible when justified by the overall circumstances. State v. Dunbar, 356 So.2d 956 (La.1978). Such identification procedures are generally permitted when the accused is apprehended within a short time after the offense and is returned to the scene of the crime for on-the-spot identification. A prompt in-the-field identification, under appropriate circumstances, promotes accuracy, as well as expediting the release of innocent suspects.
In the present case the one-on-one in-field identification was closely associated in time with the commission of the crime, since the suspect was immediately apprehended and returned to the scene of the crime. Although she did not recall some of the particular details of his appearance, because she had been severely frightened, she positively identified him by his beard and clothes.
We conclude that this case does not present a substantial risk of misidentification. The motion was properly denied.
Defendant's final contention is that the trial court erred in denying his motion for the appointment of a lunacy commission to examine him and ascertain his mental capacity to proceed.
On the day of trial, just prior to the voir dire examination, defense counsel made an oral motion for the defendant to be examined by a lunacy commission in accordance with C.Cr.P. Art. 642. However, counsel gave no reason to establish the need for a lunacy commission. The judge denied the motion. Counsel now argues that the judge abused his discretion in refusing to appoint a lunacy commission or to examine defendant to determine the necessity of a lunacy commission.
Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant lacks the capacity to understand the proceedings against him or to assist in his defense. C.Cr.P. Art. 641. The defendant bears the burden of establishing that he lacks the capacity to understand the object, nature and consequences of the proceedings against him and that he is unable, in a rational as well as factual manner, to consult with counsel in a meaningful way. State v. Hamilton, 373 So.2d 179 (La.1979).
The issue of present insanity or mental incapacity to proceed may be raised at any stage of the proceedings. State v. Henson, 351 So.2d 1169 (La.1977). The court must order a mental examination when there are reasonable grounds to doubt defendant's mental capacity to proceed. C.Cr.P. Art. 642. The trial judge's determination is entitled to great weight on appeal and will not be set aside absent a clear abuse of discretion. State v. Weber, 364 So.2d 952 (La.1978).
*935 Defense counsel failed to point out to the court at trial any basis for doubting defendant's mental capacity to proceed. In brief on appeal counsel simply states that "prior to beginning proceedings in this case, the activity of the defendant led [him] to believe that the defendant best be examined by a lunacy commission".[3] Although counsel also notes that defendant had been treated by a psychologist at ages 9, 10, 15 and 17, he gives no further reasons to bolster his previously unsupported oral motion.
Moreover, a review of defendant's testimony at trial indicated that defendant was capable of testifying without any problem and that he appeared to fully understand his rights and the nature of the proceedings. Defendant also stated that while he had seen a psychologist in the past, he has no present psychological problems.
As the defense failed to introduce any evidence or to allege any facts which even suggested that the accused was unable to understand the nature of the proceedings against him, the defendant's presumption of sanity remained unrebutted, and the trial court had no reasonable ground to question his capacity to stand trial. C.Cr.P. Art. 642; R.S. 15:432; State v. Franks, 391 So.2d 1133 (La.1980). Under these circumstances the trial court did not abuse its discretion in denying defendant's unsubstantiated request for appointment of a lunacy commission.
The conviction and sentence are affirmed.
DIXON, J., concurs with reasons.
DIXON, Chief Justice (concurring).
I respectfully concur. However, it seems to me to be especially unfortunate for this court to indicate, when it is not an issue in the case, (a simple, straightforward armed robbery, bound to be affirmed) that the "good faith" of an officer is relevant to determine the legality of his actions. It is what the officer does or does not do, and not what he knows or how he feels about it, that is relevant. I dread to think of the day that motions to suppress in criminal trials will be further prolonged by litigating whether some hardworking policeman, trying to do his job, was in "good faith" or "bad faith" when he arrested the defendant.
NOTES
[*] Judges Grover L. Covington, Luther F. Cole and J. Louis Watkins, Jr. of the First Circuit Court of Appeal participated in this decision as justices ad hoc, along with Chief Justice Dixon and Associate Justices Marcus, Blanche and Lemmon.
[1] In Patton a district attorney's investigator stopped a motorist for a traffic infraction. In Longlois a wildlife agent arrested defendant for possession of marijuana.
[2] Wildlife agents, as Justice Blanche's opinion points out, are limited in arrest powers to violations of wildlife regulations and to certain enumerated other offensesnot including possession of marijuana. See R.S. 56:108(H). District attorney's investigators are expressly denied arrest powers except insofar as they may arrest as private citizens. See R.S. 16:13.1.
[3] Counsel had been appointed to represent defendant almost five months before trial. Neither this counsel nor either of defendant's two previous attorneys suggested any incapacity to proceed prior to the day of trial, and no explanation was offered for not raising the issue earlier.