471 So.2d 769 (1985)
STATE of Louisiana
v.
Byron FRASER.
No. KA 84 1096.
Court of Appeal of Louisiana, First Circuit.
May 7, 1985.
*771 Ossie Brown, Dist. Atty. by Joe Lotwick, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
Kathleen Richey, Public Defenders' Office, Baton Rouge, for defendant-appellant.
Before GROVER L. COVINGTON, C.J., and LOTTINGER, EDWARDS, COLE, WATKINS, SHORTESS, CARTER, SAVOIE, LANIER, CRAIN, ALFORD and JOHN S. COVINGTON, JJ.
LANIER, Judge.
The defendant, Byron D. Fraser, was charged by bill of information with armed robbery and attempted second degree murder in violation of La.R.S. 14:64 and 14:27 and 30.1,[1] respectively. He filed a motion to suppress physical evidence contending he had been illegally searched. This motion was denied by the trial court.[2] Thereafter, Fraser pled guilty as charged, reserving his right to appellate review of the denial of the motion to suppress. State v. Crosby, 338 So.2d 584 (La.1976). He was sentenced to serve twenty years at hard labor in the custody of the Louisiana Department of Corrections on each charge. These sentences were ordered to be served concurrently with each other and concurrently with any other sentence he was condemned to serve at that time. This appeal followed.

FACTS
During the early morning of November 8, 1980, Raymond Davenport was attacked by a white male using a knife and robbed of approximately $1,100 (mostly in $100 bills). The attack occurred in the parking lot of the Admiral Motel located at 6500 Airline Highway in East Baton Rouge Parish. During the attack, Davenport had his throat cut and was stabbed. Davenport reported he had been robbed by the man who stood next to him when he paid his motel bill. (The bill was paid with a $100 bill.) The motel manager, Pearl Nixon, identified the defendant, Byron Fraser, as the man standing next to Davenport when *772 he paid his bill. Fraser had rented Room 20 at the motel. (Nixon did not witness the robbery.)
At approximately 2:30 or 3:00 a.m. on November 8, 1980, Joseph Ray Gauthier, an officer with the Baton Rouge Police Department, received a radio report about an armed robbery at the Admiral Motel by a white male. No height, weight or clothing description of the suspect was given. Gauthier observed Fraser walking at a fast pace in a southerly direction on Airline Highway at its intersection with Prescott, approximately one-half mile from the Admiral Motel. Gauthier testified it was "very unusual" to see a person walking in this area at that time of the morning. Gauthier stopped and talked to Fraser "to check him out". Gauthier did not place him under arrest. Gauthier asked Fraser where he had come from and where he was going. Fraser responded he was coming from a friend's house and was going to a waffle house. Gauthier asked him if he had come from the Admiral Motel and Fraser said he did not.
Gauthier then contacted Officer Ken Netterville by radio at the motel and gave him Fraser's description. Netterville instructed Gauthier to bring Fraser to the motel to see if the motel manager (Nixon) could identify him. (She subsequently did, but the record does not reflect at what point in time she did.) Gauthier asked Fraser if he would come with him to the motel and Fraser "freely and willingly came". Gauthier admitted he would not have allowed Fraser to walk away. He would have either brought him to the motel or, in the alternative, have the motel manager come to Airline and Prescott to observe Fraser.
After Fraser exited Gauthier's vehicle at the motel, Gauthier saw blood on Fraser's pants and shoes. Gauthier then advised Fraser of his rights.[3] Apparently (the testimony is not clear), Fraser was arrested at this time and searched. Officer Netterville removed a watch from Fraser's pocket. The watch was shown by Gauthier to the victim who was having emergency first-aid treatment administered to him. The victim identified the watch as his which was taken during the robbery. Fraser told Gauthier he only had $26 and placed his wallet on a police unit. Gauthier noticed a bulge in the wallet and looked in it. He found ten $100 bills, a $50 bill, a $20 bill and a $5 bill in a little compartment in the wallet. There appeared to be blood on the watch and on one of the $100 bills. Fraser did not have a weapon.[4]

INVESTIGATORY STOP
Fraser contends Officer Gauthier did not have "reasonable cause to make the investigatory stop" and that "an examination of the record will reveal that the basis for the stop of the appellant was too general in nature."
The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by Louisiana Code of Criminal Procedure, Article 215.1 and by State and Federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983). The Louisiana Supreme Court has held reasonable cause for an investigatory detention is something less than probable cause and must be determined under the facts of each case by determining whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. The right to make an investigatory stop and question the particular individual detained must be based upon reasonable cause to believe that he has been, is, or is about to be engaged in *773 criminal conduct. State v. Ossey, 446 So.2d 280 (La.1984); Belton, 441 So.2d at 1198; State v. Flowers, 441 So.2d 707 (La.1983).
In State v. Bickham, 404 So.2d 929, 932 (La.1981), the Court stated:
Knowledge that an offense has been committed is often a critical element in establishing reasonable cause. When the officer making the stop knows a crime has been committed, he has only to determine whether the additional trustworthy information justifies a man of ordinary caution to suspect the detained person of the offense. See State v. Collins, 378 So.2d 928 (La.1979).
In Bickham, the officer knew that an armed robbery had been committed by a bearded black man and observed a black male with a beard driving away from the scene immediately after the crime at 2:00 a.m. when there were few vehicles on the road. The Court found "[t]hese circumstances justify the initial attempt to detain for an investigatory stop." Bickham, 404 So.2d at 932.
In the instant case, Officer Gauthier knew an armed robbery and attempted murder had been committed by a white male at the Admiral Motel on Airline Highway. Shortly after these crimes occurred, Gauthier observed a white male walking at a fast pace on Airline Highway about one-half mile from the Admiral Motel. Gauthier testified it was "very unusual" to see a person walking in this area at that time of the morning. These circumstances created reasonable cause to justify the investigatory stop.
Because Fraser was taken (relocated) from the place where the initial stop occurred to the scene of the crime, we must also determine whether or not Gauthier exceeded the scope of a permissible investigatory stop. In State v. Jackson, 457 So.2d 660 (La.1984), the Court found the officers had exceeded the scope of an otherwise valid investigatory stop when they relocated the suspect to a police interrogation room without his consent. However, in Ossey, it was held the officers did not exceed the scope of a permissible investigatory stop when the suspect freely and voluntarily consented to a relocation.
In the present case, Gauthier testified he asked Fraser if he would go with him to the Admiral Motel and Fraser "freely and willingly came." Since Fraser freely and voluntarily consented to his relocation, Gauthier did not exceed the scope of a permissible investigatory stop. Ossey, 446 So.2d at 286.
This assignment of error is without merit.

PATENT SENTENCING ERROR
On the armed robbery charge, Fraser was sentenced to serve twenty years at hard labor. The district court judge did not specify that the sentence be served "without benefit of parole, probation or suspension of sentence", although La.R.S. 14:64(B) requires the sentence "shall"[5] so provide. This is patent sentencing error. La.C.Cr.P. art. 920. La.C. Cr.P. art. 882 was amended by Act 587 of 1984 to provide an illegal sentence could be corrected at any time by an appellate court on review. This amendment imposed upon appellate courts the same statutory duty imposed on trial courts to correct illegal sentences. Apparently, this amendment also was intended to overrule State v. Jackson, 452 So.2d 682 (La.1984) and State v. Napoli, 437 So.2d 868 (La.1983). State v. Joseph, 458 So.2d 496 (La.App. 4th Cir. 1984); cf. State v. Liddell, 463 So.2d 678 (La.App. 4th Cir.1985); State v. Holmes, 462 So.2d 286 (La.App. 1st Cir.1984). Contra State v. Davis, 463 So.2d 733 (La.App. 4th Cir.1985); State v. Sennette, 462 So.2d 675 (La.App. 4th Cir.1984); State v. Robertson, 459 So.2d 581 (La.App. 5th Cir. 1984).
A defendant in a criminal case does not have a constitutional or statutory right *774 to an illegal sentence. In Bozza v. United States, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947), the defendant was sentenced under a federal statute which carried a minimum mandatory penalty of imprisonment and a fine. Initially, the trial court only imposed imprisonment but subsequently brought the defendant back to court and also imposed a fine. The United States Supreme Court observed as follows in Bozza, 330 U.S. at 166-167, 67 S.Ct. at 649:
Petitioner contends, however, that these cases are inapplicable here because correction of this sentence so as to make it lawful increases his punishment.... If this inadvertent error cannot be corrected in the manner used here by the trial court, no valid and enforceable sentence can be imposed at all.... This Court has rejected the `doctrine that a prisoner, whose guilt is established by a regular verdict, is to escape punishment altogether because the court committed an error in passing the sentence.' ... The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner.... In this case the court `only set aside what it had no authority to do, and substitute[d] directions required by the law to be done upon the conviction of the offender.' ... It did not twice put petitioner in jeopardy for the same offense. The sentence as corrected, imposes a valid punishment for an offense instead of an invalid punishment for that offense. [Citations and footnote omitted].
La.C.Cr.P. art. 882 provides an illegal sentence may be corrected "at any time". Official Revision Comments (a) and (b) for Article 882 provide, in pertinent part, as follows:
(a) The first sentence, taken from Fed. Rule 35, states the almost self-evident authority of the court to correct an illegal sentence at any time, for an illegal sentence is, in the contemplation of the law, no sentence at all.... The phrase `at any time' makes clear the court's authority to make a correction after the defendant has begun to serve the sentence....
(b) The court's authority to correct an illegal sentence at any time, which includes the power to pronounce a legal sentence, applies when an order of appeal or writs have been granted. This authority of the trial court is specifically set forth in Art. 916.... Under the above article the trial judge is empowered whenever and at whatever stage of the proceedings he discovers his error, to directly correct the illegal sentence. [Underscoring added, citations omitted].
Since this portion of Article 882 is taken from Federal Rule 35, federal decisions interpreting Rule 35 provide guidance and persuasive precedents for interpreting Article 882. State v. Bradford, 367 So.2d 745 (La.1978); cf. Parish National Bank v. Lane, 397 So.2d 1282 (La.1981). The purpose of Rule 35 (and thus Article 882) was discussed in United States v. Henry, 680 F.2d 403, 408 (5th Cir.1982), vacated for en banc reconsideration, 693 F.2d 31 (5th Cir. 1982), vacated and remanded, 709 F.2d 298 (5th Cir.1983), as follows:
Rule 35 on its face would appear to be enacted for the benefit of defendants the correction or reduction of sentences. However, the correction of an illegal sentence does not necessarily mean that the correction will always result in a reduction of a sentence for a defendant. Where the court has imposed a sentence less than the statutory minimum, Rule 35 allows the court to bring the defendant back into court and increase the sentence. Bozza v. United States, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947); Llerena v. United States, 508 F.2d 78 (5th Cir.1975); Tanner v. United States, 493 F.2d 1350 (5th Cir.1974); Caille v. United States, 487 F.2d 614 (5th Cir. 1973); Reyes v. United States, 262 F.2d 801 (5th Cir.1959). In Llerena, the correction involved the imposition of a mandatory special parole term of three years which was not imposed until after the defendant had already been released from prison. Nevertheless, this circuit *775 found that: `The mistakes by the trial judge could not give Llerena immunity from such mandatory parole term.' Llerena, supra at 82 (footnote omitted). Thus, a correction can be made in a sentence even though the result may not be favorable for the defendant. As the Supreme Court stated in Bozza, supra 330 U.S. at 166-67, 67 S.Ct. at 648-49:
`The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner....'
It is clear then that Rule 35 does not exist solely for the benefit of the defendant. Instead, it balances the scales of justice. It ensures that a defendant will not be treated either more harshly or more leniently than the law allows. [Underscoring added].
When a sentencing (and now appellate) court discovers a sentence does not conform to an applicable penalty statute, it has a duty to correct the sentence (or cause it to be corrected) to bring it into compliance with the statute, even though the corrected sentence is more onerous. United States v. Allen, 588 F.2d 183 (5th Cir.1979); Llerena v. United States, 508 F.2d 78 (5th Cir.1975). An illegal sentence can be corrected by a trial court before an appeal is taken, Bozza, 330 U.S. at 166-67, 67 S.Ct. at 649; it can be corrected by a trial court while an appeal is pending, La.C. Cr.P. art. 916; it can be corrected by an appellate court on appeal;[6] it can be corrected after the conviction and sentence are affirmed on appeal and a subsequent application for post conviction relief has been denied, State ex rel. Wilson v. Maggio, 422 So.2d 1121 (La.1982); and it can be corrected when there is no appeal, United States v. Romero, 642 F.2d 392 (10th Cir.1981). In Romero, 642 F.2d at 395-396, a case involving a mandatory minimum sentence, appears the following:
Once concluded that the court has no discretion under § 4253(a) to sentence the appellants in a situation such as is presented to less than the indeterminate term of ten years, it follows that the initial sentences which were imposed were invalid, and there is an obligation to correct the invalid sentences, even though the appellants were serving their original sentences at the time, and even though the terms imposed were in excess of those which were originally pronounced. If a sentence is invalid under Rule 35(a) there is power to correct it, and it must be corrected.
....
A trial court may correct an invalid sentence which is in itself a nullity at any time. See Rule 35(a); Burns v. United States, 552 F.2d 828 (8th Cir. 1977); United States v. Lupino, 505 F.2d 693 (8th Cir.1974), cert. denied 420 U.S. 976 [95 S.Ct. 1401, 43 L.Ed.2d 657] (1975). The fact that the government may fail to exert due diligence in presenting this issue to the trial court may not prevent the trial court from fulfilling its judicial obligations. The doctrine of laches is an equitable remedy which is applied to promote justice. Needless to say, justice is not fostered by preventing the court from correcting an illegal sentence. We hold, therefore, that the doctrine of laches is inapplicable. [Bolding added].
It is well settled in federal jurisprudence that "the chilling of appeals does not in and of itself offend due process." United States v. Henry, 709 F.2d 298, 316 n. 26 (5th Cir.1983) and the cases cited therein at 315 n. 24. Due process is not offended by all possibilities of increased punishment after appeal, only by those which involve "actual retaliatory motivation" or "pose a realistic likelihood of `vindictiveness'." Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974); Henry, 709 F.2d at 315-316. There is a substantial distinction between vindictiveness which, after appeal, increases a defendant's sentencing exposure or increases a legal sentence, and the correction *776 of an illegal sentence. Cf. United States v. Purcell, 715 F.2d 561 (11th Cir.1983). Correction of an illegal sentence, even though the corrected sentence is more onerous, does not per se violate the constitutional rights of the defendant. Llerena, 508 F.2d at 81 n. 7; Reyes v. United States, 262 F.2d 801, 802 (5th Cir.1959). A legal sentence may not be changed after execution of sentence has begun. La.C. Cr.P. art. 881. For a discussion of prosecutorial vindictiveness which results in an increased sentencing exposure after appeal, see State v. Lewis, 461 So.2d 1250 (La.App. 1st Cir.1984) and the cases cited therein.
There is a further distinction between the correction of an illegally lenient sentence where, by statute, there is no sentencing discretion and correction of an illegally lenient sentence where the court retains some sentencing discretion. As previously indicated, the act of correcting an illegal sentence is a court's duty and does not per se create a due process problem. There is no actual retaliation or likelihood of vindictiveness (and thus no due process violation) when a court complies with a nondiscretionary sentencing requirement (mandatory minimum term or special parole provision) because trial and appellate courts have a statutory duty under Article 882 to correct any illegal sentence "at any time" (whether before, after or during appeal, and whether it is illegally excessive or lenient) and because the defendant has no right to an illegal sentence. However, where there is sentencing discretion in correcting an illegally lenient sentence, due process problems can arise. If, in correcting such a sentence a harsher sentence is given, the necessary predicate for a due process analysis is established and the sentencing court must show justification to satisfy due process requirements. North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); State v. Hart, 397 So.2d 518 (La. 1981); State v. Jenkins, 451 So.2d 1142 (La.App. 3rd Cir.1984), writ denied, 456 So.2d 1018 (La.1984). Cf. Paul v. United States, 734 F.2d 1064, 1067 n. 3 (5th Cir. 1984). However, if an identical or lesser sentence is imposed, such justification is not required. See, for example, State v. Telsee, 425 So.2d 1251 (La.1983); Purcell, 715 F.2d at 564.[7]
Imposing sentence is the function of the trial court. La.C.Cr.P. art. 871 et seq. The function of an appellate court is to review a sentence to determine (among other things) if it is legal.[8] Where there is no sentencing discretion involved in correcting an illegal sentence, it is immaterial whether the sentence is corrected by the trial court or an appellate court because *777 the result will be the same. See, for example, State v. Welch, 462 So.2d 183 (La.1985); Holmes, 462 So.2d at 289. However, where sentencing discretion is involved in correcting an illegal sentence, the respective functions of the trial and appellate courts become relevant. In Jackson, 452 So.2d at 684, the Louisiana Supreme Court observed as follows:
Finally, the court of appeal compounded its error in the present case by correcting the sentence itself, rather than remanding the case to the trial court to do so. Correction of a sentence by an appellate court is arguably appropriate in some cases. However, since it is possible that the trial judge at the time of sentencing in the present case simply overlooked the `without benefit' provision of the statute, a reviewing court cannot determine whether the judge might have imposed a sentence of fewer than ten years if the prosecution had pointed out the restriction to him. Thus, the action of the appellate court possibly denied defendant the right to have the trial judge exercise informed sentencing discretion.
This court has remanded for correction of illegal sentences where sentencing discretion was involved in State v. Jenkins, 468 So.2d 1347 (La.App. 1st Cir.1985), State v. Green, 468 So.2d 1344 (La.App. 1st Cir. 1985), and State v. Williams, 464 So.2d 451 (La.App. 1st Cir.1985). Contra State v. Peters, 468 So.2d 1342 (La.App. 1st Cir. 1985); State v. Holderfield, 464 So.2d 474 (La.App. 1st Cir.1985); State v. Liddell, 463 So.2d 678 (La.App. 4th Cir.1985).
In the instant case, the defendant was sentenced to twenty years on the armed robbery charge. The sentencing range for armed robbery is five to ninety-nine years. La.R.S. 14:64. Thus, although the illegal sentence herein is corrected by adding the "without benefit of" provision, there is still discretion in assessing the number of years in the basic sentence. Because imposition of sentence is the function of the trial court and because sentencing discretion is involved in the correction of the armed robbery sentence herein, it should be remanded to the trial court for appropriate action.[9]
Further, if the defendant receives a harsher sentence on resentencing, justification must be shown. If the justification requires the taking of evidence, a remand is necessary because this court cannot take evidence. For example, we do not know why the trial judge omitted the "without benefit of" provision and evidence of the reason therefor may be relevant to the issue of justification.

DECREE
For the foregoing reasons, the convictions and the sentence for attempted second degree murder are affirmed. The sentence for armed robbery is vacated and that case is remanded to the district court for resentencing in accordance with the views expressed herein.
AFFIRMED IN PART; VACATED AND REMANDED IN PART.
GROVER L. COVINGTON, C.J., specially concurs.
COLE, J., dissents from the order of remand, believing the sentence should be corrected at the appellate level.
EDWARDS, J., dissents for the reasons assigned by COLE, J.
GROVER L. COVINGTON, Chief Judge, specially concurring:
To ignore Act 587 of 1984, amending La.C.Cr.P. art. 882, would violate a fundamental principle of statutory construction, i.e., the presumption that a statutory amendment "manifests the legislative intent to effect change which alters" prior judicial construction of the former statute. State v. Muller, 365 So.2d 464 (La.1978). As stated in that case, in the opinion authored *778 by Justice Calogero on rehearing, our Supreme Court decried the position taken by the State which would have ignored the fact that the legislature had changed the language of a statute. Recognizing that "law is a solemn expression of legislative will", although not quoting that language from our Civil Code, the court did go on to say that the legislature "is presumed to know the prior construction of terms in the original act, and an amendment substituting a new term or phrase for one previously construed indicates the judicial or executive construction of the former term or phrase did not correspond with the legislative intent and a different interpretation should be given the new term or phrase. (citations omitted.) It is a well established rule of statutory construction that the Legislature is presumed to have enacted a statute in the light of preceding statutes involving the same subject matter and decisions construing such statutes, and, where the new statute is worded differently from the preceding statute, the Legislature is presumed to have intended to change the law."
In response to the furor created by State v. Napoli, 437 So.2d 868 (La.1983), Act 587 of 1984 was enacted. Tortuous convolutions designed to circumvent the intent of the act and continue with the "same song, second verse" have no place in the proper role of the judiciary, ignore the quoted pronouncements in Muller and superciliously emasculate La.C.C. art. 1.
COLE, Judge, dissenting.
I respectfully dissent from that portion of the opinion ordering a remand. Such procedure is a waste of judicial, prosecutorial, defense and custodial time; as well as a waste of funds provided by the taxpayers to those components of the criminal justice system. Arguably, we have the authority to correct the sentence and should do so. La.Code Crim.P. arts. 882(A); 920(2). However, in view of State v. Rod Coleman, 465 So.2d 709 (La.1985), action to correct what is undoubtedly an illegal sentence is, at any level, a tenuous and uncertain judicial endeavor. Cf. State v. Roussel, 424 So.2d 226 (La.1983).
NOTES
[1] Fraser was initially charged with attempted first degree murder in violation of La.R.S. 14:27 and 30, but this charge was amended to attempted second degree murder.
[2] The motion to suppress was submitted on the record of the preliminary examination.
[3] Gauthier also witnessed Netterville advise Fraser of his Miranda rights (point in time unspecified).
[4] Gauthier also spoke briefly with the victim who told him a white male cut his throat, stabbed him and took from him approximately $1,100 in $100 bills. The testimony does not reflect accurately at what point in time this conversation occurred.
[5] The word "shall" is universally construed as meaning "mandatory". La.C.Cr.P. art. 5; La. R.S. 1:3; La.C.J.P. art. 4.
[6] In State v. Welch, 462 So.2d 183 (La.1985), the Louisiana Supreme Court utilized La.C.Cr.P. art. 882, as amended, to correct a sentence that was illegally excessive.
[7] Obviously, there is no due process problem in correcting an illegally excessive sentence.

In Purcell there was a sentencing procedure defect which was corrected on resentencing, and he was given the same term as the original sentence. In Telsee the defendant was sentenced to 40 years for forcible rape under La. R.S. 14:42.1. That statute requires at least 2 years of the sentence be "without benefit of". The Louisiana Supreme Court corrected the illegal sentence (excessive and contrary to statute) to 25 years with 2 years "without benefit of". Under La.R.S. 15:574.4, on the original 40 year sentence Telsee would be eligible for parole after 13 1/3 years; on the corrected sentence he is eligible for parole after 8 1/3 years and the "without benefit of" provision is for less than that.
Adding the "without benefit of" provision of La.R.S. 14:64 to any armed robbery sentence which is over the minimum term of 5 years creates a due process problem.
For example, if a defendant were sentenced to 30 years for armed robbery and was a first felony offender, and the trial court failed to provide the "without benefit of" provision, pursuant to La.R.S. 15:574.4 he would be eligible for parole after serving ten years. If his illegal sentence is corrected to thirty years "without benefit of", he obviously has a harsher sentence and justification must be shown. However, if he is resentenced to ten years "without benefit of", no due process problem arises.
Query: Since the provisions of La.R.S. 15:574.4 are applicable to the sentence even though the sentencing judge does not make reference to it, why is the "without benefit of" provision of a substantive crime penalty not applicable unless the sentencing judge specifically includes it in the sentence?
[8] An excessive sentence is a type of illegal sentence.
[9] In exercising its discretion in resentencing, the trial court can consider the defendant's prior criminal record and La.R.S. 15:574.4(A) and (B).