470 So.2d 406 (1985)
STATE of Louisiana, Plaintiff-Appellee,
v.
Robert AUSTIN, Defendant-Appellant.
No. CR84-523.
Court of Appeal of Louisiana, Third Circuit.
May 15, 1985.
*407 Patrick L. Durusau, Jena, for defendant-appellant.
Norris Dale Jackson, Dan B. Cornett, District Attys. Office, Jena, for plaintiff-appellee.
Before DOMENGEAUX, DOUCET and YELVERTON, JJ.
DOUCET, Judge.
Robert Austin, the defendant, was charged by bill of information with two counts of armed robbery in violation of La.R.S. 14:64. One count was dismissed. A twelve member jury heard the case on March 5, 1984, and by unanimous verdict found defendant guilty of simple robbery, a violation of La.R.S. 14:65. On April 6, 1984, defendant was sentenced as a multiple offender to imprisonment at hard labor for five years. The defendant was sentenced immediately following a denial of a motion for a new trial in violation of La.C. Cr.P. art. 873. This error was discovered on the trial court level and corrected when defendant was resentenced on July 10, 1984. Defendant appeals his conviction.
The Best Western Townsmen Motel in Jena, Louisiana, was robbed on October 8, 1983, by a black man with a stocking over his face. Based on the desk clerk's description *408 of a black male, 5' 7" or 5' 9", 130 to 140 pounds, medium complexion, clean cut, short hair, white shirt and gray slacks, and the description by nearby residents of a car that kept circling the block, officers arrested Robert Austin as a suspect. Less than two hours after the robbery, at a one-on-one identification procedure, the desk clerk, Theresa Gatlin, made a positive identification of the defendant, Robert Austin, as the robber.
Defendant's motion to suppress the identification was not granted. Later, during the trial, a deputy said to defendant's lawyer, within the hearing of at least one juror, words to the effect of, "If you let him escape, I am holding you responsible." Defendant moved for a mistrial. His motion was denied.

IDENTIFICATION:
The defendant alleges that the one-on-one show-up was improper and rendered the eyewitness testimony at trial unreliable.
The identification procedure occurred at the sheriff's office within two hours of the holdup. A deputy apparently told Gatlin that they had a suspect in custody and she was to look and see if he was the man who had pulled the robbery. There was some dispute over the deputy's exact words. Mr. Austin was in the interrogation room alone or possibly with a police officer. Although other young, black males were readily available in the jail, on the same floor, no effort was made to procure any of them in order to conduct a proper lineup.
Prior to the identification, the witness had given a general description of the robber, which could fit a large percentage of the black male population. At the preliminary examination, the witness testified that she didn't look at his face; she could see his face, but couldn't be sure about it because of the stocking, so would be afraid to try to describe it. Defendant argues that the deputy's statement and the one-on-one identification procedure were improper and suggestive, creating a positive identification in the witness' mind, where none had before existed, rendering her eyewitness identification testimony inherently unreliable.
In reviewing an identification procedure, the court must determine whether the procedure was so unnecessarily suggestive and so conducive to irreparable mistaken identification that the defendant was denied due process. Manson v. Braithwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Bickham, 404 So.2d 929 (La.1981). A trial judge's determination on the admissibility of an identification should be accorded great weight and should not be disturbed on appeal unless the evidence reveals an abuse of discretion. State v. Bickham, supra.
The trial court must look to the totality of the circumstances surrounding the identification procedure. State v. Smith, 418 So.2d 515 (La.1982). While one-on-one confrontations are not favored by the law, they are permissible when justified by overall circumstances. State v. Dunbar, 356 So.2d 956 (La.1978). This procedure is usually employed when the suspect is apprehended within a short time after the offense and the suspect is returned to the crime scene for on-the-spot identification. Prompt in-the-field identifications, under appropriate circumstances, promote accurate identifications and expedite the release of innocent suspects. State v. Bickham, supra; State v. Dunbar, supra.
The circumstances surrounding this identification fall within the Bickham exception. The defendant was apprehended less than two hours, possibly not more than an hour after the robbery. One-on-one confrontations have been deemed reasonable when two hours had elapsed between the commission of the offense and the apprehension of the suspect. State v. Marchese, 430 So.2d 1303 (La.App. 1st Cir.1983).
The second prong of the Bickham exception requires that the apprehended suspect be returned to the scene of the crime for an on-the-spot identification by witnesses. In this case, testimony revealed that the identification procedure was conducted at the LaSalle Parish Sheriff's Office in Jena. *409 However, in State v. Loyd, 425 So.2d 710 (La.1982) the Supreme Court found that an identification which occurred in the Terrebonne Parish Sheriff's office was reliable and properly admissible where there was no indication of police suggestions as to identification and the witness made an immediate positive identification.
The Louisiana Supreme Court, in State v. Davis, 409 So.2d 268 (La.1982) discussing Manson v. Braithwaite, supra, stated:
"... reliability is the linchpin in determining the admissibility of identification testimony. The factors to be considered include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty displayed at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification ... the standard, after all, is that of fairness as required by the due process clause of the fourteenth amendment. In the final analysis, it must be determined whether under all the circumstances of a particular case there is a very substantial likelihood of irreparable misidentification."
In order to determine the reliability of Theresa Gatlin's identification, this analysis must be applied to the facts of this case.
1) The opportunity to view. Theresa Gatlin testified that the robbery lasted approximately 1½ to 3 minutes. During at least part of that time she was about three feet from the robber. He spoke to her several times. The robbery occurred in the lobby of the motel at around 1:30 p.m. Although there is no testimony regarding the lighting, the desk clerk testified that she was reading a magazine when the robber came in.
2) The degree of attention. Ms. Gatlin testified that during the holdup she had been concerned with trying to get a good description of the criminal because her sister had previously been robbed and had been unable to give an accurate description. She said that she did not concentrate on his face; because of the stocking she feared his features would be distorted and any description inaccurate. This witness was more than a frightened victim. She knew she would be asked to give a description to the police and was anxious not to repeat her sister's prior failure in that respect. Despite her admitted fear, she seems to have closely observed the robber.
3) The accuracy of the description. Theresa Gatlin's description was given to officers less than an hour after the crime. It included the robber's race, coloring, height and build. Despite the stocking, she was able to determine that he had no beard or mustache and wore his hair fairly short. She was able to describe the clothing he wore, a description which matched that of clothing found on Robert Austin's bed. No claim has been made that Robert Austin did not possess the physical characteristics described by Gatlin. Rather, the claim is that such a description could fit any number of people. Also, she did not describe or remember the apparently rather obvious scars on Austin's arms, although she testified that she had looked at his arms to determine his complexion. When Gatlin viewed the defendant at the sheriff's office, she immediately identified him as the robber.
4) The witness' level of certainty. Ms. Gatlin testified that when she saw defendant at the sheriff's office, her heart started pounding and she knew it was him. She said she was sure. Afterwards she was shown three or four other young, black males and she was certain none of them were the robber. These men were not in an identification room with a one-way mirror, but were sitting around a table in the coffee room talking to police officers.
However, it is unclear exactly what Theresa Gatlin was told before she viewed Robert Austin. The Louisiana Supreme Court has held that a statement by police officers to a crime victim that they have a suspect and would like the victim to view photographs or attend a lineup, does not *410 constitute suggestiveness,[1] for it is generally assumed that if one is called to examine a photograph or physical lineup that there is a suspect in the crowd. See State v. Wright, 410 So.2d 1092 (La.1982). Although the witness' testimony was confusing at points, she never waivered in her identification of Robert Austin.
5) The time between the crime and confrontation. Gatlin's description of the perpetrator was given to officers less than an hour after the crime. The identification took place within two hours of the robbery. There is no problem with the passage of time blurring the witness' memory.
These indicators of Gatlin's ability to make an accurate identification do not appear to be outweighed by the corrupting effect of the challenged identification itself. No pressure appears to have been put on her to identify defendant as the robber. Under the circumstances of this case, there does not seem to be "a very substantial likelihood of irreparable misidentification." Therefore, the trial court did not err in denying defendant's motion to suppress.

MISTRIAL:
The defendant further alleges that the trial court erred in refusing to grant a mistrial after a deputy said, in the presence of at least one juror, something to the effect of, "If you let him escape, I am holding you responsible."
Defendant argues that this remark impaired his presumption of innocence because it drew attention to his incarceration and indicated a police officer's belief that he might try to escape. Accordingly, the defendant argues that this remark was so prejudicial that it was error for the trial court not to grant a mistrial under La.C. Cr.P. art. 771:
"In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisified that an admonition is not sufficient to assure the defendant a fair trial."
The decision as to whether to grant a mistrial or admonition is left to the sound discretion of the trial judge. Defendant did not request or desire an admonition in this case since he felt that it would only draw attention to the remark. A mistrial is a drastic remedy and, unless mandatory, is only warranted if substantial prejudice results which would deprive defendant of a fair trial. State v. Allen, 431 So.2d 808 (La.App. 4th Cir.1983); State v. Smith, 418 So.2d 515 (La.1982). The determination of prejudice lies within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. State v. Tribbet, 415 So.2d 182 (La.1982).
The incident which brought on defendant's motion for a mistrial occurred when defendant and his attorney were walking through the sheriff's office. Deputy Glen Humphries said to defense counsel, in a rather loud voice, something to the effect of, "If you let him escape, I am holding you responsible." Deputy Humphries *411 was standing 6 or 8 feet from the attorney and 3 or 4 feet from a juror. It was not known whether the juror heard the remark. He was conversing with another deputy and apparently did not react or respond to the remark. Nor was it known whether any other jurors were in hearing range. Detective Humphries testified that he and Robert Austin often kidded around with each other and that was the context in which the remark was made. Defendant's attorney and the trial court were both of the opinion that questioning the juror would only focus his attention on the remark and cause him to attach some significance to it, when it was possible that the juror had not even heard the remark or had paid no attention to it. Defense counsel rejected the possibility of questioning the juror to find out if any other jurors had heard the remark and if none had, merely replacing that juror with an alternate.
The trial court appears to have conducted a thorough inquiry to determine the possibility of prejudice to the defendant. Since it was not even known whether the juror had actually heard the remark, no prejudice could be shown or found. Accordingly, we cannot find that the trial court abused its discretion in denying the mistrial.

SUFFICIENCY OF EVIDENCE:
Finally, the defendant contends that the trial court erred in finding that the State had proven guilt beyond a reasonable doubt and in failing to grant a motion for post conviction acquittal. Both these arguments depend on the sufficiency of the evidence. Since the standards of review for sufficiency of the evidence and a motion for post verdict judgment of acquittal are identical these two arguments will be discussed together.
Although defendant was charged with armed robbery, the jury found him guilty of simple robbery. Defendant does not contest that the State proved every element of the crime beyond a reasonable doubt, rather defendant alleges that the evidence was insufficient to show that he committed the crime. In reviewing sufficiency of the evidence the standard for review is that set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 560 (1979). The question is whether any rational fact finder, viewing the evidence in the light most favorable to the prosecution, could have found that the essential elements of the offense had been proven beyond a reasonable doubt. Jackson v. Virginia, supra. The Jackson standard is used when a conviction involves direct or direct and circumstantial evidence. State v. Hebert, 444 So.2d 228 (La.App. 1st Cir.1983); State v. Washington, 421 So.2d 887 (La.1982). La. C.Cr.P. art. 821 reads in part:
"A. The defendant may move for a post verdict judgment of acquittal following the verdict. A motion for a post verdict judgment of acquittal must be made and disposed of before sentence.
B. A post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty."
The Jackson standard is applicable to a review of a motion for post verdict judgment of acquittal. State v. Williams, 420 So.2d 1116 (La.1982).
The court's ruling on these arguments is dependent on defendant's first assignment of error. If it is determined that the motion to suppress the identification should have been granted, then the only evidence against defendant would be that his car was seen in the area, his stepsons' testimonies that defendant left the house around noon to go to the washateria, and the fact that he owned a set of clothes like those worn by the robber, and had been wearing them around the time of the robbery.
According to defendant, all the evidence except Theresa Gatlin's identification testimony either favored Robert Austin or was inconclusive. He reiterates that the robber was wearing a stocking mask and the witness did not "study" his face because the mask was possibly distorting his features. Robert Austin had large scars on his arms. The robber was wearing a short sleeve shirt. Gatlin, who was only three feet away and was concentrating on getting a *412 good description, remembered looking at his arms, but did not see any scars. Austin had worn gray slacks and a white shirt for part of the day in question, but Gatlin admitted that she had seen many shirts and pants identical to those worn by the robber.
There is nothing in the record to indicate whether or not officers asked the witness, before the showup, if she thought she would be able to recognize the robber if she saw him again. Theresa Gatlin's description to police officers was general enough to fit a large number of people. Those who witnessed the car circling had been drinking beer and were not sure exactly what time they saw Austin's car, how many times it circled or how long it continued to circle the block. The witnesses could not see the driver. One witness claimed that police were questioning them about the car around 1:10 or 1:15 when the robbery did not occur until 1:20. Both of Austin's stepsons testified that defendant left the house around 12:00 p.m. to go to the washateria and returned around 1:00 p.m. Although the robber had cut the cord on the phone, a palm print found on the receiver was not Robert Austin's, nor the desk clerk's nor the owner's, in whose office the phone was located.
We have concluded that Theresa Gatlin's eyewitness identification testimony was reliable enough to have been admissible under the Manson test. Based on her description of the robber and other witnesses' descriptions of the car, Robert Austin was arrested less than an hour after the crime. Robert Austin's scarred arms were shown to the jury. The jury apparently did not consider that Ms. Gatlin's failure to see those scars significantly detracted from the weight of the rest of her testimony. The weight to be given a witness's testimony is an issue which must be determined by the finder of fact. State v. Wright, supra. Ms. Gatlin made a positive identification at the identification procedure and at the trial.
Two witnesses described and later identified Robert Austin's car as the one they had seen repeatedly circling the area around Townsmen's Inn, near the time of the robbery. As seen in the exhibits, the car is very distinctive in appearance. Apparently the driver was hunched down in the seat, his head level with the top of the steering wheel, and could not be described beyond his race.
The only conflicting testimony is regarding the times involved. Conflicting testimony goes to the issue of credibility. The determination of credibility is a function for the trier of fact. State v. Robertson, 421 So.2d 843 (La.1982).
Although the palm print could not be identified, an expert testified that the print could have been put on the phone several days or weeks prior to the robbery. The owner of the motel said quite a few people had access to the phone in his office. Theresa Gatlin did not know at trial whether the robber had grabbed the receiver or the cord when he cut the cord, although on a previous occasion she had testified that he grabbed the receiver.
Ms. Gatlin testified that the robber wore gray slacks and a white shirt. She identified the clothes taken from defendant's home as being those worn by the perpetrator. Both of Robert Austin's stepsons identified those same clothes as the ones their stepfather had worn when he left the house on the day of the robbery.
Any rational fact finder, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the defendant committed the robbery. Accordingly, we affirm the trial court's conviction.
AFFIRMED.
DOMENGEAUX, J., concurs. As I have articulated numerous times, the Jackson rationale should not be applied to Louisiana Criminal Appellate review.
NOTES
[1] Taken alone, a suggestive identification procedure does not violate due process. It is the likelihood of misidentification which violates due process, not merely the suggestive identification procedure. The five factor Manson test is used for determining whether an identification is reliable and independent of any primary taint. State v. White, 446 So.2d 1317 (La.App. 2nd Cir.1984); State v. Guillot, 353 So.2d 1005 (La.1977).