BOWES, Judge.
Defendant, Leroy Swaingan, appeals his conviction in the Twenty-Fourth Judicial District Court of first degree robbery under LSA-R.S. 14:64.1. We affirm.
Shortly after midnight on December 11, 1988, two men walked into a Time Saver-store in Paradis, St. Charles Parish, Louisiana, and selected a bottle of Thunderbird wine. They then approached the register and as the cashier rang up the sale, one of the men pointed a gun at her and ordered her to hand over the money in the register. The men left the store with the money, the wine, and some cigarettes and food stamps, also stolen in the robbery.
The cashier immediately telephoned the police to report the crime and as she did so, she noticed a “big, white” four door car pass very slowly in front of the store. She informed the police about the car, and gave a description of the perpetrators as two black males, one somewhat taller than the other, one wearing a blue flannel jacket with jeans and a white cap, and the other wearing a blue denim jacket with jeans.
At about 12:17 a.m., State Trooper A1 Willumitis was patrolling westbound on U.S. Highway 90 near Boutte (approximately three milel east of the Time Saver) when he received a transmission concerning the robbery. The broadcast advised that the suspects were two black males wearing blue jeans and blue denim, jackets, one suspect had a white hat, and that they were driving eastbound on Highway 90 in a large white four door vehicle. Trooper Willumitis, watching the eastbound traffic, noticed a large white four door car going east. He turned around and followed the car, and when he pulled directly behind it he realized that it was a “very, very pale blue.” He pulled alongside of the vehicle in the right lane and saw that it was occupied by two black males who appeared to be wearing dark colored clothing. He advised the Sheriffs Office and stopped the vehicle.
Trooper Willumitis told the driver to step out of the car and as he complied, Willumi-tis observed that the driver was wearing a blue denim jacket and jeans. The trooper then called for back-up, believing that he had found the suspects. As the back-up unit arrived in less than a minute, the trooper had the passenger defendant, Leroy Swaingan, step out of the vehicle. When he did so, Swaingan did not close the automobile door. While Sergeant Simo-neaux, the back-up officer watched the, two suspects, Trooper Willumitis approached the passenger side of the car. Shining his *1206 flashlight into the car, he observed, on the front seat, a white baseball cap, a red knit hat, and a paper bag with several packs of Camel cigarettes spilling out. On the floor of the passenger side Willumitis observed a black pistol and a bottle of Thunderbird wine.
Ascertaining via his radio that a black handgun was used in the robbery and that money, food stamps, Camel cigarettes and a bottle of Thunderbird wine had been stolen, he placed the suspects under arrest.
The two were taken back to the Time Saver where they were identified by the cashier.
The defendant and co-suspect, Kirk Bowers, were charged by bill of information with a violation of LSA-R.S. 14:64.1, first degree robbery. Various defense motions were propounded, including a motion to suppress identification and physical evidence. A hearing on this motion was held on May 17 and 22, 1989. The trial court denied the motion and following trial, the defendant was found guilty as charged by the jury.
On October 24, 1989, a multiple offender bill was filed charging Swaingan as a fifth felony offender. Following hearing, the trial court found the defendant to be a multiple offender as charged, and further denied his motion for a new trial. After waiver of delays by the defendant, the court sentenced him to forty years at hard labor without benefit of parole, probation, or suspension of sentence. From this conviction defendant appeals.
The only error alleged on appeal is that the trial court erred in ruling that the evidence seized as a result of the initial stop was admissible. The threshold issue according to defendant is whether or not Trooper Willumitis had the right to initially stop the vehicle in which Swaingan was a passenger; resolution of this issue determines whether the evidence seized “in plain view” was inadmissible.
Defendant alleges that Trooper Wil-lumitis testified: “... in effect, that the only reason for stopping (the co-defendant) and Mr. Swaingan was the fact that they were two black individuals driving late at night,” although the trooper noted that the actual color of the car was, upon close inspection, blue and not white. Defendant urges that there was nothing suspicious about the vehicle itself or the behavior of its occupants, and that no traffic violations had been committed. Therefore, defendant urges that there was no reasonable cause for an investigatory stop of the defendant’s vehicle.
Our United States Supreme Court discussed the question of investigatory stops in Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884-5, 20 L.Ed.2d 889 (1968) and there held that the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion that criminal activity “may be afoot,” even if the officer lacks probable cause. In U.S. v. Sokolow, — U.S.-, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), the Supreme Court discussed Terry and examined the issue further:
The officer, of course, must be able to articulate something more than an
inchoate and unparticularized suspicion or 'hunch’.
Id., at 27, 88 S.Ct., at 1883. The Fourth Amendment requires ‘some minimal level of objective justification’ for making the stop. INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984). That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means ‘a fair probability that contraband or evidence of a crime will be found.’ Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), and the level of suspicion required for a Terry stop is obviously less demanding than that for probable cause. See United States v. Montoya de Hernandez, 473 U.S. 531, 541, 544, 105 S.Ct. 3304, 3312, 87 L.Ed.2d 381 (1985).
The concept of reasonable suspicion, like probable cause, is not 'readily, or even usefully, reduced to a neat set of legal rules.’ Gates, supra, 462 U.S., at 232, 103 S.Ct., at 2329 ... In evaluating *1207 the validity of a stop such as this, we must consider ‘the totality of the circumstances — the whole picture.’ United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). AS we said in Cortez:
The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same — and so are law enforcement officers. Id., at 418, 101 S.Ct., at 695.
We discussed Sokolow in State v. Davis, 547 So.2d 1367 (La.App. 5 Cir.1989) wherein we said:
A fair reading of the Sokolow opinion indicates that the specific and articulable facts to which a law enforcement officer must be able to point in justifying an investigatory stop are to be evaluated in light of all circumstances surrounding the particular incident. A court’s inquiry into the existence of reasonable suspicion should entail practical consideration of the cumulative effect of all facts articulated by the officer, further taking into account the probative value of such facts to the trained law enforcement official observing them. Any attempt to refine this ‘totality of the circumstances’ standard for reasonable suspicion is invalid.
Our Supreme Court stated in State v. Bickham, 404 So.2d 929 (La.1981) that:
Law enforcement officers may make an investigatory stop when it is reasonable to believe that a suspect has engaged in criminal activity. C.Cr.P. Art. 215.1; State v. Robinson, 342 So.2d 183 (La.1977); see also, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967). Reasonable cause for an investigatory stop is something less than probable cause. Nevertheless, the officer must have articulable knowledge of particular facts, which in conjunction with reasonable inferences drawn therefrom is sufficient to provide reasonable grounds to suspect the party involved of past, present or imminent criminal activity. State v. Wilson, 366 So.2d 1328 (La. 1978). The existence of reasonable cause must be determined under the facts of each case by ascertaining whether the officer had sufficient knowledge of circumstances which would justify an infringement upon the individual’s right to be free of governmental interference. State v. Dixon, 337 So.2d 1165 (La.1976).
Knowledge that an offense has been committed is often a critical element in establishing reasonable cause. When the officer making the stop knows, a crime has been committed, he has only to determine whether the additional trustworthy information justifies a man of ordinary caution to suspect the detained person of the offense. See State v. Collins, 378 So.2d 928 (La.1979).
In Bickham, an investigatory stop was adjudged legal where the officer knew that a bearded black man had committed the offense and observed a bearded black man driving away from the scene immediately after the crime, at a time when there were few vehicles on the road. These circumstances were sufficient to justify the initial attempt to detain. The fact that the officer had no description of the car itself and only vague descriptions of the suspects and their clothing did not defeat the legality of the stop.
In State v. Anderson, 547 So.2d 3 (La. App. 4 Cir.1989), an officer knew that a burglary had been committed by a black male, no further description being given. Some people near the building saw a black man wearing white pants run from behind the building which had been robbed; four or five blocks away the officers discovered two black males walking in the direction the subject had fled, one wearing white pants. This resulting stop was determined to be justified. See also State v. Washington, 540 So.2d 502 (La.App. 1 Cir.1989).
In the present case the trooper knew that two black males wearing jeans and denim jackets had committed the robbery and were believed to be driving a large white four door car eastbound on Highway 90. Trooper Willumitis spotted a large white-looking four door car and followed it; it *1208 was not until he was directly behind it that he realized the “white” car was a very, very pale blue. He realized further that two black males occupied the car, and that they were approximately three miles from the scene of the robbery, which had taken place some 15-17 minutes before. Under these circumstances, the trooper was justified in making the initial stop. Upon seeing the denim jacket and pants of the driver, the trooper’s suspicions increased. We find nothing unreasonable about the stop under the totality of the circumstances. The fact that the car was actually pale blue instead of white is not significant in view of the fact that the events occurred at midnight and the car was seen under artificial outdoor lighting, so that not only the cashier but the officer mistook the color for white, and that impression remained until the trooper came right upon the car itself.
In State v. Parker, 506 So.2d 675 (La. App. 5 Cir.1987) we discussed both the Terry stop and plain view doctrine:
In discussing the ‘plain view’ doctrine in State v. Duperon, 448 So.2d 720, 723 (La.App. 5th Cir.1984), this court stated:
The plain view doctrine is an exception to the search warrant requirement in that when there is no intrusion into a protected area, there is no ‘search’ for purposes of the Fourth and Fourteenth Amendments. The jurisprudence has designated three criteria which must be established before the viewing will be removed from the protections of the Fourth Amendment: (1) the prior valid intrusion into a protected area; (2) an inadvertent discovery of evidence; and (3) the evidence immediately recognizable as contraband or evidence. Coolidge v. New Hampshire, 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971); State v. Brown, 370 So.2d 525, 527 (La.1979).
It must now be determined whether the above three requirements were met in the present case. The first requirement was met because the officer had reasonable cause to stop the vehicle. La. C.Cr.P. art. 215.1 provides in part that: ‘a law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense’.
Reasonable cause for an investigatory stop or detention is something less than probable cause. Nevertheless, it requires the detaining officer to have articulable knowledge of particular facts sufficient reasonably to suspect the detained person of criminal activity-
State v. Duperon, supra; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
Lieutenant Gregoire [the investigative officer in Parker ] had reasonable cause to stop the defendants. The vehicle description was broadcast immediately after the armed robbery, and within a few minutes of the broadcast, a vehicle which fit the description was spotted and stopped.
Likewise, the second and third requirements needed to invoke the ‘plain view’ doctrine were also satisfied. The officer, without intruding into a protected area, inadvertently discovered the immediately recognizable evidence laying on the front seat when the doors were opened after the defendants had exited the vehicle.
It should further be noted that it was reasonable for the officer to approach the vehicle to make a general visual survey from outside the car in order to insure his safety because of the possibility of the car containing a weapon which had been used in the armed robbery.
Since Trooper Willumitis had a reasonable suspicion to stop the vehicle, there was prior justification for intrusion into a protected area, where the evidence was in plain view on the front seat and front floor of the car, the door of which had been left open as the defendant exited. The evidence was obtained pursuant to the Terry/Sokolow exception and the “plain view” doctrine. This assignment of error is without merit.
We have also reviewed the record for errors patent in accordance with guidelines in State v. Oliveaux, 312 So.2d 337 (La. 1975) and State v. Schneider, 542 So.2d 620 (La.App. 5 Cir.1989), writ denied, 548 So.2d 1245 (La. 1989).
*1209 When a multiple offender bill of information is filed, LSA-R.S. 15:529.1(D) provides that the trial court shall order the defendant to appear before it and “shall inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true.” LSA-R.S. 15:529.1 also implicitly requires that the court advise the defendant of his right to remain silent.[1] State v. Johnson, 432 So.2d 815 (La.1983), appeal after remand, 457 So.2d 1251 (La.App. 1st Cir.1984), appeal after remand, 471 So.2d 1041 (La.App. 1st Cir. 1985); State v. Gilbert, 520 So.2d 1184 (La.App. 5th Cir.1988), appeal after remand, 535 So.2d 1313 (La.App. 5th Cir. 1988).
At the multiple offender hearing the trial court failed to advise the defendant of his right to remain silent; however, we find that such is harmless error because the defendant asserted his right to remain silent at the hearing.
LSA-C.Cr.P. art. 921 provides that: “A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused.” Here the judgment of the trial court contained a defect, i.e., failure of the trial court to advise the defendant of his right to remain silent. However, this defect did not affect any substantial rights because the defendant exercised his right to remain silent at the multiple offender hearing.
Additionally, we note that the defendant was not arraigned until trial. However, since defendant offered no objection, such irregularity is waived under LSA-C.Cr.P. art. 555.[2]
We note no other errors patent on the face of the record. We affirm the conviction and sentence of the defendant.
AFFIRMED.

. LSA-R.S. 15:529.1(D) reads as follows:
If, at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted of a felony under the laws of this state, or has been convicted under the laws of any other state or of the United States; or any foreign government or country of a crime, which, if committed in this state would be a felony, the district attorney of the parish in which subsequent conviction was had may file an information accusing the person of a previous conviction. Whereupon the court in which the subsequent conviction was had shall cause the person, whether confined in prison or otherwise, to be brought before it and shall inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true. If he denies the allegation of the information or refuses to answer or remains silent, his plea or the fact of his silence shall be entered on the record and the judge shall fix a day to inquire whether the offender has been convicted of a prior felony or felonies, as set forth in the information. If the judge finds that he has been convicted of a prior felony or felonies, or if he acknowledges or confesses in open court, after being duly cautioned as to his rights, that he has been so convicted, the court shall sentence him to the punishment prescribed in this Section, and shall vacate the previous sentence if already imposed, deducting from the new sentence the time actually served under the sentence so vacated.

. LSA-C.Cr.P. art. 555 reads as follows:
Any irregularity in the arraignment, including a failure to read the indictment, is waived if the defendant pleads to the indictment without objecting thereto. A failure to arraign the defendant or the fact that he did not plead, is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty.