598 So.2d 1202 (1992)
STATE of Louisiana
v.
Jessie S. HEAD.
No. 92-KA-90.
Court of Appeal of Louisiana, Fifth Circuit.
April 28, 1992.
*1203 John M. Mamoulides, Dist. Atty., Dorothy Pendergast, Asst. Dist. Atty., Gretna, for plaintiff-appellee.
Ginger Berrigan, I.D.B., Gretna, for defendant-appellant.
Before GAUDIN, DUFRESNE and CANNELLA, JJ.
DUFRESNE, Judge.
The defendant, Jesse S. Head, was charged with one count of aggravated rape, LSA-R.S. 14:42, one count of attempted first degree murder, LSA-R.S. 14:27 and 14:30, and one count of aggravated burglary, LSA-R.S. 14:60. He pled not guilty and filed a Motion to Suppress Confession, Identification and Physical Evidence which were denied after a hearing. The defendant was tried by a jury and found guilty as charged on all three counts. He was sentenced to life imprisonment without benefit of parole, probation, or suspension on the aggravated rape charge, fifty years at hard labor on the attempted first degree murder charge, and thirty years at hard labor on the aggravated burglary charge. The judge additionally ordered the sentences to run consecutively and afforded Head credit for time served.
This appeal followed and the defendant alleges two assignments of error:
1. The trial court erred in denying defendant's motion to suppress physical evidence.
2. The defendant's conviction of attempted first degree murder constituted double jeopardy and must be vacated.

FACTS
On March 12, 1991, at approximately 8:00 a.m., Rosa Mendez, an international student, was dressing for class when she heard a knock at the door. Because she was not expecting anyone she looked through the peephole. The young man outside identified himself as a repairman. Since there had been repairs being conducted in the area of her apartment the previous day she did not doubt the truth of the statement and slightly opened the door. The man outside shoved the door fully *1204 open, knocking Ms. Mendez to the ground, entered and shut the door behind him. Before Ms. Mendez could recover her balance the man had straddled her, put a knife to her throat, and ordered her not to shout. Terrified, Ms. Mendez disobeyed the command and began screaming for help. The attacker stabbed her several times until she quieted and then dragged her across the efficiency apartment to a closet area. Although Ms. Mendez attempted to engage her attacker in conversation and determine the motive for the assault, he only ranted that all women, including her, were "bitches." During his tirade he continued to stab at Ms. Mendez and positioned her body with her legs above the head. He removed her pants and underwear and despite her pleas to be left alone, he anally raped her.
Following the rape, the attacker taunted the victim and demanded money and dragged her by the hair around the apartment in a search for valuables. As she struggled and attempted to explain that she had no money, he continued his frenzied attack on her and inflicted several more knife wounds. After fainting a few times, she regained consciousness and called 911. After a few moments, the police arrived and brought her to the hospital.

ASSIGNMENT OF ERROR NO. 1

DENIAL OF MOTION TO SUPPRESS
In this assignment, defendant asserts that since his initial stop and detention was without probable cause or reasonable suspicion, all evidence obtained as a result was inadmissible, including the physical evidence seized pursuant to the search warrant. Defendant further argues that the photographic identification and his statement should be suppressed because of the illegality of the initial stop.
Deputy Greg Gardner of the Jefferson Parish Sheriff's Office was the first officer to arrive on the scene. When he entered the apartment, he saw blood everywhere. He then proceeded to check the apartment for weapons and also for any other individuals. After his search turned up negative, he attempted to calm the victim and to get a physical description of the perpetrator. The victim described the suspect as a white male, slight build, light complexion, mustache, blue jeans, blue T-shirt and a plaid shirt worn over the T-shirt. Officer Gardner then broadcast this description over the police radio at approximately 9:05-9:10 a.m.
While on patrol Deputy Edward Ducos of the Jefferson Parish Sheriff's Office heard a description of the perpetrator broadcast which basically matched a description he had received earlier that morning after responding to a domestic dispute involving defendant and his girlfriend. He proceeded back to the location where he received this original information and observed the described vehicle pulling into the parking lot. Deputy Ducos drove up behind the vehicle, exited his unit, and approached defendant's car. When defendant opened the door, Deputy Ducos noticed next to the seat, a small paring knife with a red substance on it. He also saw a red plaid shirt and a blue shirt with a red substance on them, which appeared to be blood. During their encounter the defendant was very belligerent and combative; however, Deputy Ducos finally subdued defendant with the assistance of two other officers. At this point, defendant was taken into custody.
Detective David Schafer of the personal violence section of the Jefferson Parish Sheriff's Office, also testified regarding his involvement in the case. Detective Schafer first went to the Deep South Motel on Airline Highway, the place defendant was stopped. When he arrived, he observed a light blue T-shirt and a plaid shirt on the front seat of the vehicle. None of the evidence was removed or touched at this time. After retrieving the car keys, Detective Schafer instructed Deputy Pond to have the vehicle towed to the criminal investigations bureau and further instructed that no one be allowed to enter the vehicle. Detective Schafer then proceeded to Charity Hospital where the defendant had been taken, and retrieved the clothing that defendant was wearing (blue jeans) as evidence.
Detective Schafer then returned to the criminal investigations bureau and prepared a search warrant for the vehicle. *1205 When he executed the search warrant, he recovered the two shirts and a knife. Detective Schafer prepared a second search warrant in order to obtain hair and blood samples from defendant. At 8:55 p.m., the body warrant was executed at East Jefferson Hospital and the samples were then transported to the Jefferson Parish Crime Lab.
At trial, there was a joint stipulation between the prosecutor and defense counsel that the tests conducted by Pamela Williams, an expert in the field of forensic biology, on defendant's tennis shoes, jeans, knife, and blue shirt, revealed that the items contained the victim's blood.
Lieutenant Susan Rushing of the Jefferson Parish Sheriff's Office testified that she conducted a photographic lineup at East Jefferson Hospital to determine if the victim could make an identification. Lieutenant Rushing displayed, one by one, six color photographs, all with similar characteristics. When the victim observed photograph number 4, she took the officer's hand, grabbed and shook the picture, and told the officer that he was the subject. The victim finished looking at all the photographs, but stood firm in her original identification.
The victim testified at the suppression hearing that she was shown a photographic lineup in the hospital and that she positively identified photograph number 4, that of defendant, as the perpetrator. She testified that she was able to get a good look at the perpetrator because he was in her well-lit apartment for about an hour. She also identified defendant in court as the perpetrator.
The Fourth Amendment to the United States Constitution and Article I, Section 5 of the Louisiana Constitution protects citizens against unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal activity is recognized by LSA-C.Cr.P. Art. 215.1, as well as both federal and state jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Pautard, 485 So.2d 909 (La.1986).
In State v. Bickham, 404 So.2d 929, 932 (La.1981), the Louisiana Supreme Court noted:
Knowledge that an offense has been committed is often a critical element in establishing reasonable cause. When the officer making the stop knows a crime has been committed, he has only to determine whether the additional trustworthy information justifies a man of ordinary caution to suspect the detained person of the offense. See State v. Collins, 378 So.2d 928 (La.1979).
The following cases illustrate what circumstances courts have considered in determining the legality of the investigatory stop.
In State v. Bickham, supra, the investigatory stop was adjudged legal where the police officer knew that an armed robbery had been committed by a bearded man and observed a black man with a beard driving away from the scene immediately after the crime when there were few vehicles on the road. The fact that the officer had no description of the car itself and only vague descriptions of the suspects and their clothing did not defeat the legality of the stop under the overall circumstances of the case.
In State v. Swaingan, 563 So.2d 1204 (La.App. 5th Cir.1990), a panel of this court concluded that the following circumstances were sufficient to justify an investigatory stop of the defendant's car:
In the present case the trooper knew that two black males wearing jeans and denim jackets had committed the robbery and were believed to be driving a large white four door car eastbound on Highway 90. Trooper Willumitis spotted a large white-looking four door car and followed it; it was not until he was directly behind it that he realized the "white" car was a very, very pale blue. He realized further that two black males occupied the car, and that they were approximately three miles from the scene of the robbery, which had taken place some 15-17 minutes before. Under these circumstances, the trooper was justified in making the initial stop. Upon *1206 seeing the denim jacket and pants of the driver, the trooper's suspicions increased. We find nothing unreasonable about the stop under the totality of the circumstances. The fact that the car was actually pale blue instead of white is not significant in view of the fact that events occurred at midnight and the car was seen under artificial outdoor lighting, so that not only the cashier but the officer mistook the color for white, and that impression remained until the trooper came right upon the car itself.
State v. Swaingan, supra at pp. 1207-1208.
After reviewing the jurisprudence in light of the instant set of facts, it can be said that the officer had reasonable suspicion sufficient to justify an investigatory stop of defendant. At the time of the stop, the officer knew that an offense had been committed. In addition, the description of the perpetrator at the Nantucket Apartments matched the description of defendant that he received earlier that morning in regard to a disturbance at the Deep South Motel between the defendant and his girlfriend. From the earlier call, the officer also had a description of defendant's vehicle, his license plate number, a description of defendant's clothing, and information from defendant's girlfriend that he might be headed to the Nantucket Apartments. Given all this information that the officer had, it can certainly be said that he was justified in making an investigatory stop of defendant. Once the officer approached defendant's vehicle, he observed a knife on the floorboard and a red plaid shirt and blue T-shirt on the right front seat, all containing a red substance. In addition, the blue jeans defendant was wearing were covered with blood. At this point, it can be said that the officer's reasonable suspicion to stop defendant ripened into probable cause to arrest.
At the moment Deputy Ducos stopped defendant's car, he knew that a crime had been committed. In addition, he observed a knife and two shirts in defendant's vehicle which matched the description of the clothing worn by the perpetrator. Moreover, defendant's blue jeans were covered with blood. Given all these facts, it can be said that there was probable cause to arrest defendant at that point for the offenses committed at the Nantucket Apartments. Although there was sufficient probable cause, the testimony at trial and at the suppression hearing, indicates that defendant was not "formally" arrested at this point for aggravated rape, aggravated burglary, or attempted first degree murder but rather was arrested for disturbing the peace and battery of a police officer resulting from the altercation which occurred between the officers and defendant when the officers refused to let defendant enter his girlfriend's apartment.
The officer had probable cause to arrest defendant for disturbing the peace based on his testimony that when he refused to let defendant enter his girlfriend's apartment, defendant became belligerent, combative and violent, causing numerous people from the motel to come out to see what was going on. Regardless of whether or not the officer had probable cause to arrest defendant for disturbing the peace, he did, in fact, as discussed previously, have sufficient probable cause to arrest defendant for the offenses committed at the Nantucket Apartments.
As part of this assignment, defendant also contends that the officer failed to properly advise him of his rights in that he deliberately failed to tell him the reason for his detention. This contention is completely unfounded. The defendant was advised of his rights by Deputy Ducos when he stepped out of his car. Furthermore, he signed a rights of arrestee form indicating that he was advised of his constitutional rights and of the alleged offense prior to the taking of his statement.
The assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2

DOUBLE JEOPARDY ISSUE
Both the Louisiana and United States Constitutions prohibit placing a person twice in jeopardy of life or limb for the same offense. United States Constitution, Amendment 5; Louisiana Constitution of *1207 1974, Arts. 1, 15. See also LSA-C.Cr.P. Art. 591.
Louisiana courts employ two tests in determining whether a prosecution presents a double jeopardy problem. In State v. Vaughn, 431 So.2d 763 (La.1983), the Louisiana Supreme Court summarized the two tests as follows:
In State v. Knowles, 392 So.2d 651, (La.1980), the Court citing Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), outlined the following criteria for examining violations of double jeopardy:
"... The applicable rule is that where the same act of transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not ..." State v. Knowles, supra at 654.
This rule is constitutionally required by the States. Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), and is embodied in La.C.Cr.P. 596:
"Double jeopardy exists in a second trial only when the charge in that trial is: (1) Identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial; or (2) Based on a part of continuous offense for which offense the defendant was in jeopardy in the first trial."
Louisiana uses both the "Blockburger test" and the "same evidence test". State v. Steele, 387 So.2d 1175 (La.1980); State v. Doughty, 379 So.2d 1088 (La.1980); State v. Didier, 262 La. 364, 263 So.2d 322 (1972) and State v. Hayes, 412 So.2d 1323 (La.1982). When a defendant is charged with separate statutory crimes they need not be identical in elements or in actual proof to be the same within the meaning of the constitutional prohibition. State v. Hayes, supra.
The Louisiana Supreme Court explains the "same evidence" test in State v. Steele, 387 So.2d 1175, (La.1980) as follows:
"If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial ...
The `same evidence' test is somewhat broader in concept than Blockburger the central idea being that one should not be punished (or put in jeopardy) twice for the same course of conduct." Id. at 1177.
State v. Vaughn, supra at 766.
When proof of commission of a felony is an essential element of a first degree murder or an attempted first degree murder, double jeopardy precludes conviction and punishment of defendant for both murder or attempted murder and the underlying felony. State v. Lee, 554 So.2d 180 (La.App. 2nd Cir.1989).
A case similar to the present one is State v. Davis, 560 So.2d 997 (La.App. 4th Cir. 1990), where defendant was convicted of aggravated rape, attempted first degree murder and armed robbery. In Davis, defendant argued that since the double jeopardy problems extend between attempted first degree murder and each of the other two crimes, two of the convictions in the case must be vacated, leaving only the conviction and sentence for aggravated rape. In finding that only the attempted first degree murder conviction had to be vacated, the Fourth Circuit reasoned as follows:
In instant case the defendant was charged in count two with attempted first degree murder "while in the perpetration or attempted perpetration of an aggravated rape and while in the perpetration or attempted perpetration of an armed robbery." One or the other of the underlying crimes must function as the aggravating circumstance to satisfy the attempted first degree murder charge *1208 and as such every element of that crime is included in the attempted first degree murder definition. The defendant argues two of the convictions must be vacated, but following Doughty, the attempted first degree murder, the least severely punishable offense, must be vacated. The remaining crimes each contain an element the other does not (the robbery requires a taking, the rape requires nonconsensual sexual intercourse). As such, the conviction for aggravated rape and armed robbery arising out of the same conduct are not violative of double jeopardy. [Footnote omitted.]
Double jeopardy challenges to convictions for attempted first degree murder and the underlying felony were upheld in State v. Rogers, 462 So.2d 684 (La.App. 4th Cir.1984), writ denied, 478 So.2d 899 (La. 1985); State v. Jones, 525 So.2d 1149 (La. App. 3rd Cir.1988); State v. Lee, supra; State v. Cotten, 438 So.2d 1156 (La.App. 1st Cir.1983), writ denied, 444 So.2d 606 (La.1984).
In the present case, the prosecutor, in his closing argument, stated, in part, as follows:
And because of the first two charges, that of aggravated rape and aggravated burglary, we come to the last charge, which is attempted first degree murder. And as we went over those elements, we told you which is specific intent to kill or, inflict great bodily harm when you're engaged in one or more offenses, and specifically, aggravated rape and aggravated burglary.
Since the State apparently relied on the aggravated rape and/or aggravated burglary as the underlying felony to prove the elements of attempted first degree murder, then, as defendant contends, the provisions against double jeopardy have been violated. Both the prosecutor and defense counsel assert that the conviction for attempted first degree murder should be vacated. However, the jurisprudence holds that to remedy a violation of double jeopardy, the reviewing court vacates the conviction and sentence of the less severely punishable offense and affirms the conviction and sentence of the more severely punishable offense. State v. Doughty, 379 So.2d 1088 (La.1980); State ex rel Adams v. Butler, 558 So.2d 552 (La.1990). See State v. Dubaz, 468 So.2d 554 (La.1985) where the Louisiana Supreme Court vacated the conviction and sentence of the less severely punishable offense based on a double jeopardy violation, and then vacated the sentence of the affirmed conviction and remanded for resentencing.
Accordingly, the defendant's conviction and sentence for aggravated burglary is vacated due to double jeopardy. His conviction for aggravated rape and sentence to life imprisonment, without benefit of parole, probation of suspension, and his conviction for attempted first degree murder and sentence of fifty years at hard labor, to run consecutively and with credit for time served are affirmed.
AGGRAVATED BURGLARY CONVICTION AND SENTENCE VACATED.
AGGRAVATED RAPE AND ATTEMPTED FIRST DEGREE MURDER CONVICTION AND SENTENCE AFFIRMED.