# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 97-KA-00398 COA

**MARVIN LEWIS BECKUM**                                                     **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                     **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/17/96 |
| TRIAL JUDGE: | HON. RICHARD WAYNE MCKENZIE |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CLIFTON S. GADDIS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | E. LINDSAY CARTER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | STRONG ARMED ROBBERY: SENTENCED TO SERVE A TERM OF 15 YRS IN THE CUSTODY OF THE MDOC |
| DISPOSITION: | AFFIRMED - 3/9/99 |
| MOTION FOR REHEARING FILED: | 03/22/99 - DENIED 12/05/00 WITH DISSENTING OPINION |
| CERTIORARI FILED: | 12/28/2000 |
| MANDATE ISSUED: | |

ON MOTION FOR REHEARING

EN BANC.

McMILLIN, C.J., FOR THE COURT:

¶1. The motion for rehearing is denied. The original opinion in the following form is reaffirmed.

¶2. On October 4, 1993, Mary Mathis was assaulted and robbed by a man later identified as the defendant in this cause, Marvin Beckum. Beckum was subsequently arrested and charged with the crime. His initial appearance before a magistrate occurred on October 8, 1993, at which time bond was set at $50,000. After that appearance, Beckum signed a waiver of his *Miranda* rights and gave a statement to an investigating officer that admitted his involvement in the incident. Beckum was subsequently formally indicted for armed robbery, tried, and convicted. He has now appealed to this Court raising three issues which he claims warrant a reversal of his conviction. We disagree and affirm the judgment of sentence.

**I.**

## The First Issue: The Trial Court's Refusal to Suppress Beckum's Confession

¶3. Beckum sought unsuccessfully to suppress his post-arrest statement and he now raises its admission at trial as reversible error. The State counters Beckum's assertion of error with essentially three arguments. First, the State argues that the confession met all of the requirements for voluntariness under applicable precedent regarding *Miranda* warnings and proper procedures for waiving the Fifth Amendment right to assistance of counsel under *Miranda*. Second, the State seems to suggest that Beckum is procedurally barred from raising the separate issue of whether his Sixth Amendment right to the presence of counsel was violated by the interrogation. Third, the State alternatively argues that the admission of Beckum's confession was, even if improper, harmless error because of the overwhelming evidence of his guilt.

¶4. To begin our evaluation of the arguments we look to see if Beckum was in fact represented by counsel at the time of his confession. The order entered by the magistrate conducting Beckum's initial appearance after his arrest is, to a certain extent, contradictory when addressing the matter of Beckum's representation. In the first paragraph, the order states that Beckum "appeared in Court represented by Hon. Jeff Bradley, Attorney of Record." The order, however, states elsewhere that "[t]he defendant is unrepresented," and declares that he was advised of his right to representation that included appointed counsel in the event he was without the necessary legal fees to hire an attorney. The law is well-settled that, once a suspect has invoked his right to counsel after initiation of formal adversarial proceedings by the State, no subsequent waiver of right to counsel connected with a police-initiated interrogation as to that crime can be effective. *Kirby v. Illinois*, 406 U.S. 682, 688 (1972); *Cannaday v. State*, 455 So. 2d 713, 722 (Miss. 1984). The issue, therefore, becomes whether Beckum had, at the time of his interrogation, invoked his right to representation in regard to the particular offense involved in this case. The only evidence in the record on the point is the magistrate's order referred to above. Beckum presented no evidence at the suppression hearing that he ever did anything further to invoke his right to counsel at the initial appearance or at any time prior to making the incriminating statement to the investigating officer. We find the magistrate's rather inconclusive order insufficient to suggest unequivocally that Beckum had invoked his Sixth Amendment right to counsel. The Mississippi Supreme Court, in considering a similar question in the case of *Wilcher v. State*, quoted with approval the following passage from a Fifth Circuit opinion:

> A defendant's Sixth Amendment right to counsel attaches upon the initiation of adversary proceedings. *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). Wilcher asserts that even if his waiver was voluntary and knowing, the questioning in this case violated the prophylactic rule of *Michigan v. Jackson*, 475 U.S. at 635, 106 S.Ct. at 1411. The Supreme Court held in Jackson that "if police initiate interrogation after a defendant's assertion at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Id.* The State argues that Wilcher never took any action to invoke his right to counsel and therefore had not triggered the *Jackson* rule.
>
> We recently addressed the effect of appointment of counsel on the rights of a defendant who has never asserted or accepted the counsel. We held that a defendant's Sixth Amendment rights are not violated by questioning in the absence of his attorney unless the defendant has asserted his right to an attorney. *Montoya v. Collins*, 955 F.2d 279 (5th Cir.1992). . . . We held that "for purposes of *Jackson*, an 'assertion' means some kind of positive statement or other action that informs a reasonable person of the defendant's 'desire to deal with the police only through counsel.' " *Id.* at 283. Thus, we concluded that Montoya's interrogation did not violate the rule of *Jackson* because he did

not assert a right to counsel and thereby trigger its protection.

Wilcher likewise did not assert a right to counsel in his interrogation by the officers. Under *Montoya* he was not protected by the rule in *Jackson* and voluntarily waived his right to counsel under the Sixth Amendment. *Wilcher IV*, 978 F.2d at 876.

Therefore, because Wilcher did not request an attorney or in any way assert his Sixth Amendment right to counsel, his argument on this point is without merit. Furthermore, the evidence indicates that, upon being given his Fifth Amendment*/Miranda* warnings, Wilcher waived his right to counsel before each inculpatory statement was given. As a general rule, a defendant may waive his Sixth Amendment right to counsel when he waives his Fifth Amendment rights. *Patterson v. Illinois*, 487 U.S. 285, 296, 108 S.Ct. 2389, 2397, 101 L.Ed.2d 261 (1988); *Mettetal v. State,* 602 So.2d 864, 868 (Miss.1992).

*Wilcher v. State*, 697 So. 2d 1087, 1096-97 (Miss. 1997) (citing *Wilcher v. Hargett*, 978 F.2d 872 (5th Cir. 1992)).

¶5. In the absence of any affirmative evidence that Beckum accepted the representation of Attorney Bradley at the time of his initial appearance, we conclude that there is no basis to exclude Beckum's subsequent apparently voluntary statement based on the violation of any right accruing to him under the Sixth Amendment.

¶6. As to his claim that the statement was not voluntary because it was obtained while he was under the influence of narcotics and was extracted through promises of favorable treatment, the officer who took the statement and another witness who was present both testified as to the voluntariness of Beckum's confession. The trial court concluded that the State had demonstrated that Beckum freely and voluntarily made the incriminating statement after having been fully informed of those rights guaranteed him under the Fifth Amendment to the United States Constitution. Once the trial court has reached such a conclusion, this Court may not interfere except when an incorrect legal standard was applied, manifest error was committed, or the decision is contrary to the overwhelming weight of the evidence. *Willie v. State,* 585 So. 2d 660, 665 (Miss. 1991). On that standard of review, we find no basis to interfere with the trial court's decision to admit Beckum's statement.

## II.

### The Second Issue: A Procedural Defect in Sentencing

¶7. Beckum complains that he was improperly sentenced because of the failure of the trial court to announce his sentence in open court while he was present. The record is clear that Beckum was not present in open court when sentence was pronounced by the trial court from the bench. In fact, there is no indication in the record that such a pronouncement ever occurred. A *nunc pro tunc* sentencing order was entered purporting to reflect the date Beckum last appeared in person in court; however, that avails the State nothing because the transcript of that appearance shows that the trial court did not pronounce sentence at that time, but rather deferred the matter because Beckum had a new attorney who said, in regard to the sentencing, "I don't know what the sentence was." Beckum's new counsel was not alone in that predicament since there is no evidence that sentence had been set. Uniform Circuit and County Court Rule 11.01 requires that "sentence shall be pronounced in open court at any time after conviction, in the

presence of the defendant . . . and recorded in the minutes of the court." U.R.C.C.C. 11.01. Although a defendant's right of allocution in Mississippi is not absolute (*see Johnson v. State*, 461 So. 2d 1288, 1292 (Miss. 1984)), it is nevertheless a recognized privilege that may be exercised if asserted. Entering a judgment of sentence without a formal sentencing proceeding in open court at which the defendant is present effectively destroys even the possibility of the defendant exercising his right of allocution. Nevertheless, Section 99-35-143 of the Mississippi Code states that:

> [a] judgment in a criminal case shall not be reversed because the transcript of the record does not show . . . that the prisoner was present in court during the trial or any part of it, or that the court asked him if he had anything to say why judgment should not be pronounced against him upon the verdict . . . unless the record show that the errors complained of were made ground of special exception in that court.

Miss. Code Ann. §99-35-143 (Rev. 1994). In *Jones v. State,* the defendant specifically raised as an issue on appeal that the record did not show that he was in court when sentence was pronounced. *Jones v. State,* 227 Miss. 518, 527, 86 So. 2d 348, 349 (1956). The Mississippi Supreme Court, relying on this statute, said that Jones's failure to point out this perceived procedural defect at the trial level constituted a waiver of the issue on appeal. *Id.* at 527-28, 86 So. 2d at 350. We conclude that the same considerations apply in this case. Beckum had ample opportunity to present his grievance in the manner in which he was sentenced to the trial court. Had he done so, we have little doubt that this defect could have been remedied by appropriate action of the trial court. We decline to grant relief on this issue raised for the first time on appeal.

### III.

### The Third Issue: Denial of a Speedy Trial

¶8. Beckum claims that his conviction should be reversed because he was not tried within 270 days of his indictment as required by Section 99-17-1 of the Mississippi Code or, alternatively, because he was denied a speedy trial as guaranteed him under the Sixth Amendment to the United States Constitution. Miss. Code Ann. § 99-17-1 (Rev. 1994).

¶9. Section 99-17-1 requires that a defendant be tried no later than 270 days after his arraignment, "[u]nless good cause be shown, and a continuance duly granted by the court . . . ." Miss. Code Ann. § 99-17-1 (Rev. 1994). In this case, Beckum was arraigned on June 21, 1994 and was not tried until August 22, 1995. Thus, 427 days elapsed between arraignment and trial. In that circumstance, the burden falls on the State to demonstrate good cause for the delay. *Vickery v. State*, 535 So. 2d 1371, 1375 (Miss. 1988).

¶10. In this case, the State relied upon proof that, shortly before his first scheduled trial date, Beckum changed attorneys of his own volition. The trial was then reset for approximately three months later, but about a month in advance of the second trial date, Beckum's substitute counsel moved to withdraw, indicating that his client had lost confidence in the attorney's ability to properly represent his interests. On November 30, 1994, the trial court appointed a member of the public defender's office to represent Beckum, and a scheduling order was entered setting a trial date of January 19, 1995. Without explanation appearing in the record, trial was not conducted on that date and there is no further indication in the record as to why Beckum's trial was delayed until August 21, 1995.

¶11. Beckum, by his own actions, prevented the trial from commencing any time prior to the November 15, 1994, trial date. Even then, the case was not triable after November 15 because of Beckum's lack of counsel. However, we conclude that this delay attributable to Beckum was ended by the appointment of counsel to represent him on November 30, 1994. Thus, we find that all delays from the date of arraignment until November 30, 1994, were attributable to Beckum's actions and served to toll the running of the statutory 270 period. Beginning the running of the 270 day period on November 30, 1994, even if it is conceded that there were no further delays chargeable to Beckum that would further toll the running of the period, it appears in the record that trial commenced on August 22, 1995, which was the 265th day. Therefore, excluding those delays caused by Beckum, there was no violation of Beckum's statutory right to a prompt trial as set out in Section 99-17-1. Miss. Code Ann. § 99-17-1 (Rev. 1994).

¶12. Beckum, by motion, raised the separate issue of whether his constitutional right to a speedy trial guaranteed under the Sixth Amendment was violated. He also argues on appeal that the trial court's refusal to dismiss on this separate claim requires reversal. However, our review of the record indicates that Beckum did not present any evidence to the trial court concerning this distinct question and did not obtain a ruling from the trial court on the alleged Sixth Amendment violation by the State. When the speedy trial motion was brought on for hearing, the inquiry was limited entirely to whether the statutory 270 day period from arraignment had been exceeded. The trial court, in ruling on the motion, stated that "this Court is of the opinion that it doesn't even come close to the 270 day rule, and that being the case, is going to overrule and deny [the motion]."

¶13. Sixth Amendment speedy trial considerations are substantially different from the somewhat mechanical computation of the period from arraignment to trial necessary to determine whether a prima facie violation of the 270 day rule has occurred. Primary among those distinctions is that the Sixth Amendment right attaches at the time of arrest rather than arraignment. *Spencer v. State*, 592 So. 2d 1382, 1386-87 (Miss. 1991). The difference is dramatic in this case, since there was a period of over eight months from arrest to arraignment that had no effect on the 270 day statutory violation question but would seem, on the face of it, to be a significant factor in any Sixth Amendment violation analysis. *Barker v. Wingo,* 407 U.S. 514, 530 (1972); *Jenkins v. State*, 607 So. 2d 1137, 1139 (Miss. 1992).

¶14. We begin our analysis of this issue by noting the fundamental proposition of appellate procedure that an appeals court will generally not reverse a trial court for matters that were not presented, in the first instance, to the trial court for resolution. *Duplantis v. State*, 708 So. 2d 1327, 1339 (Miss. 1998). It is also the case that, in regard to motion practice, the duty lies with the movant to obtain a definitive ruling from the trial court on any motion if the failure to grant the relief sought in the motion is to be preserved for review on appeal. *Willie v. State*, 585 So. 2d 660, 671 (Miss. 1991).

¶15. After the trial court ruled in this case, clearly limiting itself to the 270 day statutory aspect of Beckum's motion, it stated into the record that it would "give [Beckum] an opportunity to put anything further in the record [he] desire[d] to put in the record at th[at] time." It would have been entirely appropriate at that time for counsel to point out to that the separate issue of Beckum's Sixth Amendment right to a speedy trial had not been addressed; however, that opportunity was declined by defense counsel. We, therefore, treat this aspect of Beckum's motion to dismiss on constitutional grounds as a matter on which the defendant failed to obtain a ruling from the trial court. Beckum's subsequent participation in the trial without insisting that the trial court first deal with this distinct aspect of his dismissal motion became, in our view, a waiver of any right to raise the issue on appeal.

¶16. **THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT OF CONVICTION OF STRONG-ARM ROBBERY AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.**

**SOUTHWICK, P.J., BRIDGES, LEE, PAYNE, AND THOMAS, JJ., CONCUR. IRVING, J., DISSENTS WITH SEPARATE OPINION JOINED BY KING, P.J., COLEMAN AND DIAZ, JJ.**

IRVING, J., DISSENTING:

¶17. For the reasons set forth below, I respectfully dissent from the majority's decision that Marvin Beckum's Sixth Amendment Rights were not violated as a result of custodial, police-initiated interrogation of him after his initial appearance. The majority is eminently correct in holding that "the law is well settled that, once a suspect has invoked his right to counsel after initiation of formal adversarial proceedings by the State, no subsequent waiver of right to counsel connected with a police-initiated interrogation as to that crime can be effective." *Kirby v. Illinois*, 406 U.S. 682, 688 (1972); *Cannaday v. State*, 455 So. 2d 713, 722 (Miss. 1984). The majority is also correct in identifying the substantive issue to be "whether Beckum had, at the time of his interrogation, invoked his right to representation in regard to the particular offense involved in this case." The majority errs, however, when it concludes that "the magistrate's order is the only evidence in the record" on the point of whether Beckum had, at the time of his interrogation, invoked his right to representation in regard to the particular offense involved in this case. Then, the majority, relying solely on the ambiguous magistrate's order, holds that Beckum's statement given to the authorities after his initial appearance (and appointment of counsel) should not be excluded because of the lack of "any affirmative evidence that Beckum accepted the representation of Attorney Bradley at the time of his initial appearance."

¶18. The inconclusive order upon which the majority relies is as follows:

ORDER

ON THIS DAY this cause came on for Initial Appearance, and the Court, having been duly advised in the premises, FINDS that the Defendant in the above styled and numbered cause, appeared in Court represented by Hon. Jeff Bradley, Attorney of Record, that said defendant was charged with STRONG ARMED ROBBERY defendant was advised in Open Court:

1. That the defendant is not required to speak and that any statements he makes may be used against him.

2. That the defendant is unrepresented, that he has the right of counsel, and that if he is unable to afford counsel, an attorney will be appointed to represent him.

3. That the defendant has the right to communicate with counsel, family or friends, and that reasonable means will be provided to enable him to do so.

4. That the defendant has the right to a preliminary hearing and further, the defendant was furnished a copy of the charges against him and a preliminary hearing (was) (<u>was not</u>) waived, and that said defendant requested that bond be set.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the defendant on this day appeared in open court charged with STRONG ARMED ROBBERY and that the defendant be, and is hereby, remanded to the custody of the Sheriff of Forrest County, Mississippi, to await action of the Grand Jury (with bond) (without bond) upon said charge in the amount of $50,000.

SO ORDERED AND ADJUDGED on this the 8 day of OCTOBER, A.D., 1993.

¶19. The first unnumbered paragraph of the order states that Beckum *appeared in court represented by Honorable Jeff Bradley, Attorney of Record.* Paragraph 2 of the order indicates that the defendant "is unrepresented." These two apparently conflicting statements form the basis for the majority's consternation over whether Beckum had invoked his right to counsel.

¶20. Rule 6.03 of the Uniform Circuit and County Court Rules entitled INITIAL APPEARANCE provides as follows:

Every person in custody shall be taken, without unnecessary delay and within 48 hours of arrest, before a judicial officer or other person authorized by statute for an initial appearance.

Upon the defendant's initial appearance, the judicial officer or other person authorized by statute shall ascertain the defendant's true name and address, and amend the formal charge if necessary to reflect this information. The defendant shall be informed of the charges against him/her and provided with a copy of the complaint. If the arrest has been made without a warrant, the judicial officer shall determine whether there was probable cause for the arrest and note the probable cause determination for the record. If there was no probable cause for the warrantless arrest, the defendant shall be released. The judicial officer shall also advise the defendant of the following:

1. That the defendant is not required to speak and that any statements made may be used against him/her;

2. *If the defendant is unrepresented*, that the defendant has the right to assistance of an attorney, and that if the defendant is unable to afford an attorney, an attorney will be appointed to represent him/her; (emphasis added)

3. That the defendant has the right to communicate with an attorney, family or friends, and that reasonable means will be provided to enable the defendant to do so;

4. Conditions under which the defendant may obtain release, if any;

5. That the defendant has the right to demand a preliminary hearing while the defendant remains in custody.

¶21. A careful reading of Rule 6.03 makes it amply clear that the magistrate, in entering the subject order, was simply attempting to follow the requirements of the rule, and in the process apparently, in Paragraph 2, left out the word "if" which should have been placed after the word "that" and before the word "the" so that Paragraph 2 of the order would have read, "That if the defendant is unrepresented, that he has the right of counsel, and that if he is unable to afford counsel, an attorney will be appointed to represent him."

¶22. But the quest for the answer to the question of whether Beckum had invoked his right to counsel at the

time of the police-initiated interrogation does not end here. Resort to Beckum's testimony during the Motion to Suppress makes clear what the magistrate's order leaves unclear. At Record 2, page 18, we find the following colloquy:

<u>DIRECT EXAMINATION BY MR. HELFRICH</u>:

Q. State your full name, please.

A. Marvin Lewis Beckum.

Q. Marvin, I'm going to ask you to speak as loudly as I'm speaking to you so everybody can hear, and so Ms. Oswalt can take down a correct transcript of the proceedings. Marvin, do you recall October 8th of 1993?

A. Yes, sir, I do.

Q. And did you go to first appearance on the morning of October 8, 1993?

A. Yes, sir.

Q. That would have been a Friday; is that correct?

A. Yes, sir.

Q. Were you appointed a lawyer on October 8, 1993?

A. Well, when I went to first appearance, they appointed me Jeff Bradley.

Q. So, Jeff Bradley was appointed to represent you.

A. Yes, sir.

Q. On that morning, and a bond was set; is that correct?

A. Well, actually, they-the grand larceny, they gave me 5,000 for it, but Jeff Bradley said, about the strong arm robbery, they didn't set a bond right then because according to what I said to DeJarnett.

Q. All right.

A. They let me know then, you know.

Q. So, you were appointed an attorney at 8:30 that morning or thereabouts on October 8th, 1993.

A. Yes, sir.

Q. And did you see Detective DeJarnett?

A. After first appearance.

Q. On that morning.

A. After first appearance.

Q. After first appearance.

A. Yes, sir.

Q. Where did you see Detective DeJarnett after first appearance?

A. He had come talked to me. He supposedly been getting me some clothes from my mom, and he said that my mom didn't want to come up here, which I knew that wasn't true; my mom will come anywhere I'm at. And so, we were supposed to have been going to his office, you know, for my mom to come there. *And Jeff Bradley stopped him then and asked him, Where was he going with Marvin Beckum; was he going to question me, and he said, No.* (emphasis added).

Q. And so you went to DeJarnett's office.

A. Yes, sir.

¶23. Thus, based on the above colloquy, it is clear that counsel had been appointed to represent Beckum in this case prior to the police-initiated interrogation.

¶24. The remaining question then is whether Beckum had invoked his right to counsel. It is obvious that the magistrate had to find Beckum indigent in order to appoint counsel for him. It is also obvious that in order to make the determination whether Beckum was indigent, the magistrate had to ask Beckum whether Beckum wanted an attorney and whether he could afford to hire an attorney himself. Indeed, one of the purposes of the initial appearance is to ascertain whether an accused has an attorney, wants an attorney and can afford an attorney. Once a magistrate determines that the accused has an attorney, the inquiry ends there concerning the accused's right to counsel. On the other hand, if the magistrate determines that the accused is without counsel but wants counsel to represent him, then inquiry must be made as to whether the accused can afford counsel. It is after an accused advises that he desires counsel but cannot afford counsel that one is appointed for him.

¶25. While it is true that the record does not contain a transcript of the proceedings during the initial appearance, it does make clear, as indicated above, that counsel was appointed for Beckum during the initial appearance. It is also clear from Beckum's testimony as set forth above that he accepted Bradley's representation of him. This is highlighted in the colloquy where Beckum and Bradley had a discussion regarding the bond which was set for Beckum. It is further highlighted by the fact that the attorney, Jeff Bradley, who had just been appointed to represent Beckum, stopped Detective DeJarnett immediately after the initial appearance when DeJarnett was getting ready to question Beckum. According to Beckum, Bradley stopped "him (Detective DeJarnett) then and asked him, where was he going with Marvin Beckum; was he going to question me, and he said, no." DeJarnett testified during the Motion to Suppress and did not contradict Beckum's account of the conversation between Bradley and DeJarnett.

¶26. It is, therefore, clear to me that if the record is inconclusive as to whether Beckum requested the appointment of counsel, it is not inconclusive as to whether he accepted counsel.

¶27. Since I am convinced on this record that counsel had been appointed for Beckum and Beckum had accepted the appointment, the police-initiated interrogation of Beckum violated his right to counsel under the Sixth Amendment and the prophylactic rule enunciated in *Michigan v. Jackson,* 475 U.S. 625, 625

(1986).

¶28. For the reasons set forth herein, I would reverse and remand.

**KING, P.J., COLEMAN, AND DIAZ, JJ., JOIN THIS SEPARATE WRITTEN OPINION.**

IRVING, J., DISSENTING TO DENIAL OF MOTION FOR REHEARING:

¶29. I dissented when this case was originally decided. I write to expand upon that dissent in the wake of the majority's decision to deny the motion for rehearing.

¶30. The right to counsel is fundamental to the administration of our system of justice, and any wilful violation of this sacred right by law enforcement should not be tolerated by the judiciary. In this case, I believe Beckum's rights in this regard were not inadvertently, but knowingly and blatantly, violated by the investigating officer.

¶31. On October 4, 1993, a man went to the home of eighty-two year old Mary Mathis in Hattiesburg. The man had performed work for Mathis previously, but she did not know his name. He choked her, robbed her of approximately one hundred dollars and stole her car. The Hattiesburg Police Department developed Beckum as a suspect and arrested him on October 8, 1993. Exactly how they identified him as a suspect is uncertain, because, in addition to not knowing her attacker's name, Mathis did not know where he lived or any other identifying characteristics. Moreover, while her stolen car was recovered, Beckum's fingerprints were not found on it. Thus, the only evidence offered at trial was Beckum's confession, along with the elderly victim's identification of him.

¶32. Beckum asserts, on appeal, that his confession was taken in violation of his right to counsel provided by the Sixth Amendment to the United States Constitution. On the day he was arrested, Beckum entered an initial appearance and was represented by Jeff Bradley, a public defender. Bradley also represented Beckum in a second, unrelated charge. After the initial appearance, Charles DeJarnett, a detective with the Hattiesburg Police Department, removed Beckum from Beckum's jail cell and took him to DeJarnett's office where Beckum gave the confession.

¶33. At the suppression hearing, Beckum testified that "we [he and DeJarnett] were supposed to have been going to his office, you know, for my mom to come there. And Jeff Bradley stopped him then and asked him, where was he going with Marvin Beckum was he going to question me, and he said, 'No.'" No witness, including DeJarnett, contradicted Beckum's testimony as to the exchange between Bradley and DeJarnett.

¶34. Once the right to counsel is asserted all interrogation must cease immediately and may only recommence if initiated by the accused. *Minnick v. Mississippi*, 498 U.S. 146, 150-51 (1990); *Smith v. Illinois*, 469 U.S. 91, 95 (1984); *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981); *Duplantis v. State*, 644 So. 2d 1235, 1242-43 (Miss. 1994); *Balfour v. State*, 598 So. 2d 1203, 1208 (Miss. 1991). Further, any subsequent waiver of rights during a state initiated interrogation is ineffective. *Michigan v. Jackson*, 475 U.S. 625, 635 (1986); *Wilcher v. State*, 697 So. 2d 1087, 1096 (Miss. 1997). Any statement taken in a state initiated interrogation from an individual who has been formally charged is in violation of the rights of an accused as secured by the Fifth and Sixth Amendments to the United States Constitution. *Minnick v. Mississippi*, 498 U.S. at 150-51.[1]

¶35. The record before us indicates, on its face, that Beckum suffered an infringement to his rights under the Sixth Amendment to the United States Constitution. Where a defendant has accepted an attorney who has been appointed to represent him at the time of his initial appearance, no further interrogation may take place unless initiated in a separate transaction by the attorney or his client. *See Kirby v. Illinois*, 406 U.S. 682, 688 (1972); *Cannaday v. Tate*, 455 So. 2d 713, 722 (Miss. 1984).

¶36. It is clear that based on Beckum's uncontradicted testimony at the suppression hearing, he had accepted Bradley's representation. I noted in my initial dissent that the majority's argument -- that there was no affirmative evidence that Beckum accepted the representation of Attorney Jeff Bradley -- is simply not borne out by the record in this case. Obviously the majority either misinterprets, or discounts altogether, Beckum's statements at the suppression hearing when he was recounting the events following the appointment of counsel to represent him.

¶37. Beckum's testimony indicates that he and his court appointed attorney, Bradley, had a discussion, following the appointment, about bond being set on the robbery charge. This is what Beckum said: "*Jeff Bradley said, about the strong arm robbery, they didn't set a bond right then.*" Clearly, Bradley would not be discussing the bond matter with Beckum had Beckum not accepted his representation of him on that charge. It is also clear that it was after the discussion between Bradley and Beckum that Bradley saw DeJarnett with Beckum and inquired if DeJarnett was going to interrogate Beckum. Further, Bradley's inquiry to DeJarnett speaks affirmatively that Beckum had accepted Bradley's representation of him. Why would Bradley attempt to protect Beckum if Beckum had not accepted Bradley's representation? What message did Bradley's question convey to DeJarnett? Can it be legitimately argued that after Bradley's inquiry, DeJarnett was not on notice that Bradley was representing Beckum? The answers to these rhetorical questions are obvious, and they do not portend well for the argument that Beckum had not invoked his right to counsel or that the State was without knowledge of that invocation.

¶38. The State cannot derive any strength from the fact that Beckum said nothing when his counsel asked DeJarnett if DeJarnett was going to question him. Beckum's non-reaction was consistent with what a defendant does who is being represented by counsel. What was Beckum to say? Nothing. Nothing, that is, unless he wanted to talk to DeJarnett notwithstanding the fact that his counsel did not want him to do so.

¶39. It should also be noted that Bradley was Beckum's court appointed counsel. That fact alone argues in Beckum's favor as having invoked his right to counsel. While counsel may be appointed to represent a defendant against a defendant's wishes, nothing in this record indicates that was the case here. In fact, the record indicates that an initial appearance was held, and as a result thereof, an order was entered appointing Bradley as counsel for Beckum. As noted in my initial dissenting opinion, the record does not contain a transcript of the initial appearance hearing; however, it is reasonable to conclude that the appointment of counsel occurred because Bradley was an indigent who asserted his right to counsel but was unable to employ counsel. I arrive at this conclusion because Miss. Code Ann. § 99-15-15 (Rev. 1994) permits the appointment of counsel for indigents only upon the court or judge "being satisfied that such person is an indigent person and is unable to employ counsel." The process of determining a person's indigence necessarily involves an inquiry as to the desire for counsel and the financial ability to employ counsel, along with the appropriate responses from the accused. These responses would necessarily include an affirmation by the accused of a desire for counsel. There is nothing in the record to suggest that the appointment here was made in violation of the aforementioned statute.

¶40. As stated, we do not have the benefit of the transcript of the initial appearance hearing, but we do have the benefit of knowing something about Beckum's actions immediately following the initial appearance hearing during which counsel was appointed. We know from Beckum's uncontradicted testimony at the suppression hearing that he and his court appointed attorney talked after the initial appearance hearing and before DeJarnett's interrogation of him.

¶41. "For purposes of *Jackson,* an 'assertion' means some kind of positive statement or other action that informs a reasonable person of the defendant's 'desire to deal with the police only through counsel.'" *Montoya v. Collins*, 955 F. 2d 279, 283 (1992) (quoting *Michigan v. Jackson*, 475 U.S. 625, 626 (1986)). This "does not require a defendant to utter the magic words, 'I want a lawyer,' in order to assert his right to counsel." *Id.* at 283. Courts must give "'a broad, rather than a narrow, interpretation to a defendant's request for counsel.'" *Id.* at 283 (quoting *Connecticut v. Barrett*, 479 U.S. 523 (1987)). Giving a broad interpretation to the facts pointing to Beckum's assertion of the right to counsel compels the inescapable conclusion that he had in fact asserted that right prior to the police-initiated interrogation by DeJarnett.

¶42. *Montoya* recognizes the legitimacy of police-initiated interrogation after the attachment of the Sixth Amendment right to counsel but not after the accused's assertion of that right. There is a major distinction between the two. The right to counsel attaches at every critical stage of the criminal process. An initial appearance is one such critical stage. A defendant may waive that right. However, it is clear that Beckum did not waive that right at his initial appearance, and his actions following the initial appearance indicate both an assertion of his right to counsel and an acceptance of the appointment of counsel. Once a defendant has asserted the right to counsel, *Jackson* prohibits any further police-initiated interrogation of the defendant. *Jackson*, 475 U.S. at 636.

¶43. In *Montoya,* counsel was appointed as a result of the court's own volition. At the magistrate's hearing, Montoya did not request an attorney and said nothing when one was appointed for him. The magistrate stated that he decided to appoint counsel for represent Montoya because Montoya was charged with capital murder, not because Montoya requested the assistance of counsel. *Id.* at 282.

*¶44. Montoya* is without doubt distinguishable from our case. The defendant in *Montoya* did not request counsel, did not interact with counsel after counsel was appointed, and neither said nor did anything to indicate that he had accepted appointed counsel. Thus, he was not shielded from a police initiated effort to obtain a statement. That is not our case. In our case, Beckum conferred with his court appointed attorney immediately after the appointment. He and his attorney discussed bond for Beckum on the underlying charge. The attorney made it known to the police that he was representing Beckum and, by his inquiry, in effect told the police not to question his client. The police thwarted counsel's effort to further protect his client by lying to counsel.

¶45. Our focus, for purpose of determining whether Beckum invoked or asserted his right to counsel, should be aimed not at his actions during the encounter with DeJarrett but at the appointment stage and the period immediately following. Viewing the matter from this perspective, it is exceedingly clear that Beckum had asserted his right to counsel by accepting court appointed counsel. It is true that Beckum could still talk with the police after accepting counsel, but it is also true that the discussion could not be initiated by the police as was done in the case here.

¶46. After Beckum had accepted the representation by Bradley, DeJarnett escorted Beckum from

Beckum's cell for the purpose of interrogating Beckum. While DeJarnette was in the process of escorting Beckum, Bradley, Beckum's court appointed attorney, asked DeJarnett his intentions relative to interrogating Beckum. The only action that DeJarnett could have taken that was consistent with Beckum's Sixth Amendment rights was to discontinue any planned interrogation. Instead, DeJarnett took Beckum to his office where he obtained a confession outside of Bradley's knowledge or presence. This police-initiated interrogation of Beckum violated his right to counsel under the Sixth Amendment and the prophylactic rule enunciated in *Michigan v. Jackson,* 475 U.S. 625, 625 (1986). The confession should have been suppressed.

¶47. In concluding that Beckum's conviction should be reversed and remanded for a new trial because of the violation of his right to counsel, I have considered the violation in the context of harmless error. However, due to the magnitude of the constitutional violation, the wilful nature of the violation, as well as the fact that the only other evidence against Beckum was the in-court identification of him by the aged victim, I do not believe the violation ought to be treated as harmless error. There was no corroborating evidence of the in-court identification other than Beckum's confession. While eyewitness identification is powerfully persuasive to a jury, we know in reality it is extremely unreliable evidence. We only have to recall recent cases where defendants who were identified by victims "with certainty" were later exonerated by DNA testing. For these reasons, I would reverse and remand for a new trial. In a case such as this -- where the police officer is specifically asked by the accused's attorney if he is going to engage in interrogation of the accused and the police officer denies any intention of doing so, yet moves forthwith with his clandestine plan and does just that -- it is not too much of an imposition to punish that conduct by requiring a new trial.

**KING, P.J., AND PAYNE, J., JOIN THIS DISSENTING OPINION AS TO DENIAL OF MOTION FOR REHEARING. MOORE AND MYERS, JJ., NOT PARTICIPATING.**

1. The Fifth Amendment itself creates no specific right to counsel; rather, in order to safeguard an individual's right to not be compelled to testify against himself, the right to counsel attaches at any point, including before an individual is formally charged or arraigned, when he requests counsel in an interrogation. *Miranda v. Arizona*, 384 U.S. 436, 467 (1966). The Sixth Amendment right to counsel attaches only after the initiation of proceedings against an individual. *U.S. v. Gouveia*, 467 U.S. 180, 190 (1984). The Sixth Amendment right to counsel attaches at the point in time of the initial appearance. *Morgan v. State*, 681 So.2d 82, 90 (Miss.1996); *McGilberry v. State*, 741 So.2d 894, 904 (Miss. 1999).